360 P.2d 822

Dean **HALES** and Valda Hales, Plaintiffs and Appellants,

v.

Vance **PETERSON** and Margery Peterson, d/b/a Valley Builders Supply Co., and Paul Caldwell, Defendants and Respondents.

No. 9294.

Supreme Court of Utah.

April 6, 1961.

Eldon A. Eliason, Delta, for appellants.

Don J. Hanson, Salt Lake City, Dilworth Woolley, Manti, for respondents.

CROCKETT, Justice.

Plaintiffs sued for damages for the death of their nine year old daughter, Nila Hales, alleging that she was negligently run down by defendants' truck. From a jury verdict and judgment entered thereon in favor of the defendants, plaintiffs appeal.

The mother, Valda Hales, was a teacher at the school at Redmond, Utah. On the morning of October 24, 1958, she drove Nila in the family car from their home in the nearby town of Salina, where they lived. In Redmond she turned eastward on the street just south of the school and parked the car on the south side of the street where several other automobiles were parked. Mrs. Hales then went to the school house and Nila went into a store on the south side of the street to buy some things. She returned to the car, left her purchases there, then proceeded northward across the street, passing in front of the car and behind one parked just ahead of it. As she emerged from between these cars into the street the defendants' loaded gravel truck coming from the west at about 15 to 20 miles per hour collided with her. Its wheel or wheels passed over part of her, killing her instantly. Defendants' truck driver, Paul Caldwell, did not see Nila but felt a "bump on the right rear wheels like they had run over something," so he stopped and returned to where Nila lay in the street.

Certain errors are assigned with respect to the instructions. But a survey thereof indicates that the issues as to the negligence of the defendants' truck driver

and the contributory negligence of Nila were fairly and adequately covered. It may be conceded that requests for further instructions were made which accurately state the law and which it would not have been error to give. But they were not necessary because the issues were presented to the jury in a fair and understandable manner. This is the desired objective and it should be done with the least possible instructions.[1] When it is accomplished we will not reverse because the court refused to give other requested instructions even though they contain accurate statements of the law which might also have been applicable to the case.

An important aspect of this appeal is plaintiffs' assignment of error in sustaining objections to questions asked Mr. Roger E. Nielson, the school principal, concerning the time it took 14 girls of Nila's class to walk normally, walk as fast as they could, and run as fast as they could for a distance of 100 feet. Plaintiffs proposed to use this as a basis for calculating the time Nila would have been visible to the truck driver as she proceeded into the street. Their hypothesis is: that the blood spot where Nila was run over was 18½ feet from the south curb; the Hales' car extended seven feet therefrom; so Nila must have cleared it and have been visible to him approaching from the west while she ran or walked 11½ feet. This rests upon the testimony of two eye witnesses: David Weldon, age eight, and Gerald Christensen, age 13, who were playing on the school grounds. It is necessary to look to their testimony to see what probative value the evidence of the girls' speed would have had and whether it is reasonable to believe that rejecting that evidence had a substantial detrimental effect on plaintiffs' case.

David Weldon testified, and reiterated, that Nila *walked* out into the middle of the street and as the truck came upon her yelled "Help, help"; that it hit her and knocked her.

"Q. How far did it knock her?
A. Eight or 15 steps."

It cannot be determined exactly how far or what direction she was thrown by the truck so it is obvious that there is an element of uncertainty as to the distance she had proceeded into the street when the collision occurred. But for the purpose of this analysis, we can set aside that question and adopt the plaintiffs' premise as to the point of impact.

If we take David's version of what happened: that Nila walked out into the street, saw the truck coming at her and yelled "Help, help" before it struck her, the driver would unquestionably have had ample time to see her and try to avoid her by applying his brakes and/or swerving to the left. Under that fact situation the speed at which she would have walked into

1. See Hadley v. Wood, 9 Utah 2d 366, 345 P.2d 197.

the street would not be of any special consequence.

The way Gerald saw it: as Nila came in front of her mother's car she "darted" out into the street; just then the truck came between him and her and it was "his impression that she was struck by the rack of the truck \* \* \* it looked like the rack had hit her \* \* \*." It is thus apparent that under his version of the incident the exact speed at which Nila proceeded would not have had a critical bearing on the issues.

██ In addition to the foregoing, it is to be observed that the speed at which the girl would walk or run is not the type of unusual information which a jury is totally unacquainted with and has special need for help. Although this evidence was competent and might well have been allowed if the trial court had thought it would be helpful to the jury, under the circumstances shown we are not persuaded that prejudicial error was committed in sustaining the objection to it.

The remaining assignment of sufficient importance to merit discussion is the charge that one of defense counsel made this improper statement in his argument to the jury: "that the highway patrol men and investigating officers had not issued any arrest or citation for wrong doing in this case against the truck driver, *and accordingly had found that he was not negligent."* (Emphasis added.) There being no reporter's transcript of the arguments, what occurred is shown by the affidavit of Hon. John L. Sevy, Jr., the trial judge. It sets forth the above statement, except that it does not include the emphasized clause. The judge's affidavit further states, "plaintiffs' counsel objected to the statement and as judge, I directed defense counsel not to pursue the matter further."

██ The question as to whether a citation was issued is admittedly immaterial and had no place in the argument to the jury. But we do not think that the mere mention of the fact is any such grave matter as counsel for plaintiffs now urges. It seems fair to assume that he did not himself regard it as of such serious consequence at the time. He made no request for any further instruction or admonition by the court which he should have done if he thought the matter of sufficient importance to require further correction.[2] It was not until the case had gone to the jury and an unfavorable verdict was returned that the matter seems to have taken on such significance as to justify requesting another trial. The trial court is allowed considerable latitude of judgment as to what is permissible for counsel to argue, and as to what may be so prejudicial that a miscarriage of justice could result. Sustaining the objec-

2. See Andrews v. Free, 45 Utah 505, 146 P. 555; Emery v. Prudential Ins. Co., 89 Utah 430, 57 P.2d 747.

tion and admonishing counsel not to pursue that argument amounted to a ruling on that question, and adequately advised the jury of the court's view that the non-issuance of a citation had no bearing on the issues, thus rectifying whatever harm might have been done by any impropriety in the statement made.[3] They had been clearly instructed as to their prerogatives to decide the issues, and it seems quite unlikely that they were under any misunderstanding in regard to the issue of negligence because their attention was called to the fact that the officers failed to issue a citation.

■ We have heretofore recognized the importance of safeguarding the right of trial by jury.[4] A necessary corollary to it is that there must be some solidarity in the result so that it can be relied upon. To the extent the verdict can easily be set aside by the court, the right to trial by jury is weakened. In order to give substance to the right, once the trial has been had and a verdict rendered it should not be regarded lightly, nor overturned because of errors or irregularities unless they are of sufficient consequence to have affected the result.

Anyone acquainted with the practical operation of a trial by jury and the human factors that must play a part therein is aware that it would be almost impossible to complete a trial of any length without some things occurring with which counsel, after the case is lost, can find fault and, in zeal for his cause, all quite in good faith, magnify into error which to him and the losing parties seems blameable for their failure to prevail. However, from the standpoint of administering evenhanded justice the court must dispassionately survey such claims against the over-all picture of the trial, and if the parties have been afforded an opportunity to fully and fairly present their evidence and arguments upon the issues, and the jury has made its determination thereon, the objective of the proceeding has been accomplished. And the judgment should not be disturbed unless it is shown that there is error which is substantial and prejudicial in the sense that it appears that there is a reasonable likelihood that the result would have been different in the absence of such error, which we have concluded does not exist here.

Affirmed. Costs to defendants (respondents).

WADE, C. J., and HENRIOD, McDONOUGH, and CALLISTER, JJ., concur.

3. See Monmouth Min. & Mfg. Co. v. Erling, 148 Ill. 521, 36 N.E. 117, 39 Am. St.Rep. 187.

4. See Joseph v. W. H. Groves Latter Day Saints Hospital, 10 Utah 2d 94, 348 P.2d 935.