371 P.2d 201

Florence SCHWEITZER, Plaintiff and Respondent,

v.

Harvey STONE, S & I Trucking Company, Lloyd V. Higginbotham and Western Auto Transport Company, Defendants and Appellants,

and

Fred Sullivan, Defendant, Cross-Complainant and Respondent,

v.

Ivan SHEFFY, Plaintiff in Intervention and Respondent.

No. 9215.

Supreme Court of Utah.

May 4, 1962.

Judgment in favor of such party reversed and remanded for a new trial.

Hanson, Baldwin & Allen, Merlin R. Lybbert, Salt Lake City, for appellants.

Howell, Stine & Olmstead, Richard W. Campbell, Ogden, for respondent.

CALLISTER, Justice.

These are personal injury and property damage actions arising out of a rather involved automobile accident. Florence Schweitzer filed suit for personal injury against Harvey Stone, S & I Trucking Company, Lloyd Higginbotham, Fred Sullivan and Western Auto Transport Company. Lloyd Higginbotham, Western Auto Transport Company and Fred Sullivan cross-complained against Harvey Stone and S & I Trucking, who counter-cross-claimed. Ivan Sheffy filed a complaint in intervention against Lloyd Higginbotham, Western Auto Transport Company and Fred Sullivan.

During the trial of the case, Western Auto Transport, Higginbotham and Sullivan settled the Schweitzer claim before the case was submitted to the jury; which returned a verdict in favor of Schweitzer against all defendants, with the exception of Sullivan, who was dismissed out of the case as a party defendant by the trial judge. A verdict of $4,500 was returned in favor of Sheffy on his complaint in intervention against Higginbotham and Western Auto Transport. A verdict in the sum of $8,000 was returned in favor of Sullivan on his cross-complaint against Stone and S & I Trucking Company. The jury further found against Stone and S & I Trucking Company on their counter-cross-claims.

Stone and S & I appealed from the judgment in favor of Schweitzer and against them, but this appeal was dismissed, upon settlement out of court, by stipulation of those parties. Therefore, the Schweitzer aspect of the case is not now before us.

Stone and S & I appealed from the judgment against them and in favor of Sullivan. However, this appeal has also been dismissed upon stipulation of the parties and by order of this court.

Neither Stone nor S & I have appealed from the adverse judgments on their counter-cross-claims, which leaves only the appeal of Higginbotham and Western Auto from Sheffy's judgment to be considered.

The occurrences giving rise to the causes of action here involved are as follows:

At approximately 10:30 p. m. on April 20, 1957, three trucks and trailers, belonging to S & I Trucking Company and loaded with drilling mud, were proceeding eastward on U. S. Highway 30. As they approached a point approximately 17 miles east of Echo Junction in Summit County, Utah, Harvey Stone, an employee and

driver of one of the S & I units, attempted to pass the lead S & I truck and trailer. At this point the trucks were on an uphill grade and the highway was divided into two eastbound traffic lanes and one westerly traffic lane. Before he could pass the lead truck, Stone's unit sputtered and the motor quit. He coasted uphill and as far as possible to the right until his truck and trailer came to a standstill. The night was dark, but the highway was comparatively straight at this point and the stalled truck was visible for 9/10ths of a mile to the west and over 900 feet to the east.

The last S & I truck, driven by Ivan Sheffy, passed the stalled unit and parked about 400 to 500 feet farther up the highway as far to the right as possible. Sheffy set the brakes, left the head and clearance lights on, switched on the turn indicator, and walked back to the stalled truck to see if he could be of assistance. Upon reaching the truck he stood on the highway and put his head in the left window of the cab. Stone, believing his truck had run out of gas, had switched over to the auxiliary tank and was trying to start the engine. Sheffy endeavored to help him.

At this moment a Western Auto Transport truck, loaded with new pickup trucks and driven by Lloyd Higginbotham, crashed into the rear of the stalled S & I truck with resultant property damage and injuring Stone, Sheffy and Fred Sullivan, who was asleep in the cab of the Western Auto Transport truck.

The impact of the collision threw a pickup truck from the Western Auto Transport onto the road and into the westbound traffic lane. Neither Stone nor Sheffy saw or heard the approach of the Western Auto Transport truck.

A few moments later an automobile driven by John Schweitzer, with his wife, Florence, as a passenger, came over the hill from the east, swerved to the left to miss the pickup truck, and crashed into the two wrecked trucks.

Among other things, the evidence was conflicting as to whether there were lights on the stalled truck and whether it was partially into the center lane of traffic or entirely in the outside lane.

With respect to their appeal from the judgment in favor of Sheffy, the appellants, Higginbotham and Western Auto Transport, first contend that the lower court erred in refusing to direct a verdict in their favor or, in the alternative, refusing to grant a new trial for the reason that the answers of the jury to special interrogatories were inconsistent with its general verdict.

At the conclusion of the evidence the court instructed the jury generally on the issues of the case and, pursuant to Rule 49, U.R.C.P., submitted to the jury a series of interrogatories in which it was

directed to make specific findings. The pertinent questions and the answers thereto by the jury were:

"QUESTION 1

"(A) Was Harvey Stone negligent by allowing the gasoline of one tank to become exhausted before switching to the auxiliary gasoline tank?

"Answer: Yes.

"If so, was such negligence a proximate cause of the collision, (a) Between the two trucks involved? ·

"Answer: Yes.

"(b) Between the Schweitzer car and two trucks involved?

"Answer: Yes.

"(B) Was Harvey Stone negligent in failing to remove the S & I truck from the travelled portion of the highway?

"Answer: *No.*

"If so, was such negligence a proximate cause of the collision,

"(a) Between the two trucks involved?

"Answer: No.

"(b) Between the Schweitzer car and the two trucks involved?

"Answer: No.

"(C) Was Harvey Stone negligent in failing to have lights on or flares about the S & I truck immediately prior to the collision between the two trucks?

"Answer: Yes.

"If so, was such negligence a proximate cause of the collision,

"(a) Between the two trucks· involved?

"Answer: Yes.

"(b) Between the Schweitzer car and the two trucks involved?

"Answer: Yes."

"QUESTION III

"(A) Did Ivan Sheffy negligently expose himself to a hazard which he knew or in the exercise of a reasonable care should have known might result in harm to him by assisting Harvey Stone to start the stopped truck *when there were no lights on said truck without first putting flares out to warn other motorists of the presence of said truck?*

"Answer: *Yes.*

"If so, was such negligence a proximate cause of the injuries which Ivan Sheffy received?

"Answer: *No.*

"(B) Did Ivan Sheffy fail to keep such a lookout for his own safety while he was assisting Harvey Stone as would have been kept by a reason-

ably prudent person under the same circumstances?

"Answer: *Yes.*

"If so, was such failure a proximate cause of the injuries to Ivan Sheffy?

"Answer: *No.*" (Emphasis added.)

In answer to other interrogatories the jury found Higginbotham negligent in failing to keep a proper lookout, in failing to keep his truck under adequate control, and in driving with the headlights on low beam. The jury found each of these acts of negligence to be a proximate cause of the collision.

The inconsistency of which Higginbotham and Western Auto Transport complain is that the jury found that Stone was negligent in failing to have lights on or flares about the stalled truck and that this negligence was a proximate cause of the collision; whereas, they found Sheffy negligent in exposing himself to the hazard of assisting Stone start the stalled truck when it was unlighted and without first putting flares out, and in not keeping a proper lookout, but that none of these acts of negligence was a proximate cause of his injuries.

While not conceding an inconsistency, respondent Sheffy argues that even if the findings as to him be deemed inconsistent with the findings as to Stone, nevertheless, he is entitled to have a jury pass upon his lawsuit, and that as long as the evidence supports the findings and judgment as to him, that judgment may not be overturned. In support of this position, respondent Sheffy cites cases from Arkansas [1] and Idaho.[2] These cases stand for the proposition that since consistency is not required of different juries in separate actions, there is no requirement of consistency in consolidated actions tried to the same jury. There can be no dispute that had the Stone and Sheffy actions been tried separately, the inconsistent verdicts could not be upset merely because of the inconsistency.

That the findings and verdicts as to Stone and Sheffy are inconsistent there can be no doubt. There is no reasonable basis for distinguishing between their actions. Both were engaged in the same act, at the same time and place. Since the jury determined that Stone's failure to have his lights on and his failure to put out flares constituted negligence, which was a proximate cause of the collision, it is impossible to reconcile this finding with the finding that Sheffy was negligent in being about the truck in the absence of lights without first putting out flares, but that this

1. Brown v. Parker, 217 Ark. 700, 233 S.W. 2d 64.

2. Baldwin v. Ewing, 69 Idaho 176, 204 P. 2d 430.

negligence was not a proximate cause of his injuries.

We are not constrained to follow the reasoning of the Arkansas and Idaho cases and are more persuaded by the views contained in Detrixhe v. McQuigg,[3] an Oklahoma decision, wherein that court had this to say regarding the reasoning of the Arkansas case:

> " * * * The court's [Arkansas Supreme Court] conclusion in that case is based upon the premise that since consistency is not required of different juries in separate actions being tried separately, there is no requirement of consistency in 'consolidated actions tried to the same jury. Our answer is that the court did not attach sufficient significance to the basic difference involved—only one jury is hearing the evidence and it cannot at the same moment believe that two totally irreconcilable and inconsistent facts existed."

Furthermore, in the instant case the jury was given special interrogatories to answer, whereas, in the Arkansas and Idaho cases this was not done, the juries merely returning general verdicts. The answers given by the jury and their verdicts point out clearly, and amplify, the inconsistency. We believe that this situation is one contemplated by Rule 49(b), U.R.C.P.,[4] and that the trial court erred in denying the motion for a new trial.

In the instant case this court cannot decide which of the inconsistent answers or verdicts is correct, and therefore, must hold them both bad. However, Stone did not appeal from his adverse judgment and it is thereby conclusive of the issues tried with respect to his cause of action. This leaves before us only the judgment of Sheffy, in his favor and against Higginbotham and Western Auto Transport, which, being based upon inconsistent answers and verdict, must be vacated and a new trial granted.

Judgment in favor of plaintiff in intervention, Ivan Sheffy, and against defendants, Lloyd V. Higginbotham and Western Auto Transport Company, is reversed and remanded for new trial. Costs awarded to defendants.

McDONOUGH, J., concurs.

HENRIOD, Justice (concurring specially in the main opinion of CALLISTER, J.).

3. 316 P.2d 617.

4. " * * * When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."

I join specially with the main opinion, and doing so feel inclined to make some observations about the dissent of my learned colleague, Mr. Justice CROCKETT. I question the statement in the dissent that the negligence of the two truck drivers was not the same.

Both truck drivers drove the same kind of vehicle. One was equally as cognizant, not only of the rules of the road, but with respect to statutory interdictions anent putting out flares. The jury, as to both drivers, answered the same interrogatory with respect to putting out flares. In the one case it answered that failure to do so proximately *caused* Stone's injury, but that Sheffy's failure to do so, did *not* proximately cause *his* injury. Both drivers being charged with the same duty of care, the jury's answers were completely inconsistent. In fact, in the opinion of this writer, it seems more reasonable to have held Sheffy to a greater degree of care, since the truck driver who was doing the same thing as the other, to-wit, trying to get the stalled truck started, deliberately placed himself *out on the highway itself,* in a place of greater danger than the one who was in his truck. No one in logic or reason, could say that had he been working on *his own truck,* in the same place, that a jury *consistently* could have found that his working *beside* his truck without putting out flares would *not* be actionable negligence, but that if he were working *inside* the truck without putting out flares he *would* be guilty of such negligence. Operators of like equipment, both had the duty to put out flares as a warning of their presence on the highway, whether in or out of the vehicle.

The dissent errs when it attempts to refine and differentiate between the two types of negligence on the part of the two drivers, by saying the negligence of one started in point of time ahead of the negligence of the other. At time of the collision it made no difference when the two negligences started, if they were of the same type, concurring at the same time. Reasoning that the negligence of Sheffy came later and consisted of exposing himself to danger under the conditions created by Stone makes a difference in responsibility, does not conform to any syllogistic reasoning where the two drivers simultaneously were doing the same thing at the same place, except that one was *in* and one was *out* of the truck. It is suggested also in the dissent that there was negligence on the part of Stone for running out of gas, causing his truck to stall in a dangerous position on the highway. The jury disagreed with such conclusion, when it found, in answer to an interrogatory, that the truck was not mispositioned.

It is further difficult to understand how the dissent concedes that the questions put

to the jury provide a plausible basis to argue that Sheffy was found guilty of the same negligence as was Stone, and that inasmuch as they were positioned together when injured, the finding of proximate cause logically should have been the same, —only to destroy such concession and argument, by the easy and untenable statement that it is not so because of "correct principles applicable to review on appeal."

The dissent further generalizes that "it appears most reasonable to believe that the jury would have regarded the questions * * * simply whether he exposed himself to danger * * *, and not as requiring an answer as to whether he was negligent in connection with *the placement of the truck*, or the failure to have lights on it, or to place flares." Under the facts of this case the quoted statement reflects its own fallacy. If the jury felt that way about it why didn't they *refuse to answer* the "placing of flares" question as to Sheffy, and why did they deliberately and unanimously *answer* that question?

The dissent indicates that a further consideration bearing on this problem is the fact that the duties in regard to the *misposition of the truck* (which the jury said was not mispositioned) and nonplacement of flares fell upon Stone, and therefore any blame for such misdeeds was his. To justify such statement the dissent volunteers presumably, in review of the facts *given to the jury,* that Sheffy had no duty to set out the flares. The trial court did not subscribe to such "as a matter of law" statement, nor does this writer. For this court to say that *under the facts,* and *as a matter of law,* Sheffy had no duty to put out flares, thus precipitating a nonjury issue of fact, establishes a dangerous precedent to the effect that where one truck driver helps another stalled on the highway, as a matter of law he would be insulated against any charge of negligence where no flares are put out by him or anyone else.

Most of the dissent is not only conjecture, but is conjecture as to what the jury may have conjectured. Repeatedly we have said not even the jury can do that, much less this court. In this connection, the dissent having indulged conjecture as to what the jury *could* or *may* have believed, its statement that consistency "has been referred to as a jewel" hardly is consonant with its inconsistent assertion that "It is not properly within the province of this court to look behind the verdict and *speculate* as to the process by which the jury arrived at it."

I am of the opinion that the case should be sent back for a new trial as to Sheffy's claim.

CROCKETT, Justice (dissenting).

I dissent from the majority opinion which nulifies the jury verdict and reverses the trial court's judgment. I do so because it is my view: first, that the verdicts rendered with respect to the contributory negligence of Stone and Sheffy are not necessarily inconsistent; and second, that even if they were inconsistent, that would not be ground for reversal in this case.

The fact that the jury found proximate cause as to Stone, and not as to Sheffy, would render the verdicts inconsistent only if the negligences of the two parties were the same. I think a fair and realistic look at the evidence; and at the questions and answers set out in the majority opinion, will show plainly that they were not.

The fact which may appear to give some substance to the argument that Sheffy was guilty of the same negligence as Stone is that they were positioned near together and were injured from the same source; and such plausibility as the attack on Sheffy's verdict has is occasioned by the way the questions as to him were worded as set forth in the main opinion. But if they are examined in the light of correct principles applicable to review on appeal, the plausibility vanishes.

It is universally recognized that whenever there is doubt or uncertainty, it must be resolved in favor of the validity of the verdict and the judgment. The specific application of that principle here requires that the questions put to the jury and the answers given be reconciled as consistent with each other if that reasonably can be done, and that they not be interpreted as inconsistent or contradictory unless that is the only reasonable conclusion to be drawn therefrom.[1]

Looked at from that point of view, it seems unmistakable that the negligence of Stone: in permitting his truck to run out of gas before switching to his auxiliary tank; so it stalled in a position of danger in a traveled portion of the highway; and in failing to keep its lights on and/or in not placing flares, were all prior in time and different in character from the negligence found against Sheffy.

As to Sheffy's negligence: if we look at the facts shown by the evidence and the manner in which the questions presented the issues to the jury from the point of view most favorable to reconciling it as consistent in reasoning and with the objective of sustaining the verdict, it appears most reasonable to believe that the jury would have regarded the questions as to him as inquiring simply whether he exposed himself to danger under the conditions created by Stone; and not as requiring an answer as to whether he was negli-

---

1. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Line, Ltd., 82 S.Ct. 780 (1962).

gent in connection with the placement of the truck, or the failure to have lights on it, or to place flares; and further that the negligence actually found against Sheffy was that under those conditions he exposed himself to danger and failed to keep a proper lookout. I emphasize the fact, as noted above, that these of necessity had to be later in time and different in character from the negligence found against Stone.

I submit that the above is not only what the jury reasonably could believe (which is all that is necessary to support Sheffy's verdict on a separate and independent basis), but that it is the most rational interpretation both of the evidence and of what the jury found. I go beyond that: it is the only finding of negligence which would have been sustainable against Sheffy.

A fact of controlling importance in that respect is that the duties as to the operation of the truck, the keeping its lights on and the placement of flares fell upon Stone, and therefore any blame for misdeeds therein was his, not Sheffy's. The unsoundness of attempting to hold Sheffy responsible for either of those aspects of the negligence as apparent when one reflects that he could not have had anything whatsoever to do with the placement of the truck, nor with the failure to have its lights burning; and this is more particularly true of the failure to place flares. Even if the latter duty had been Sheffy's, the evidence is that he would have had only about one minute to do so. Thus he would have had to rush about and place flares before even asking the other driver (Stone) what was wrong and why he didn't pull the truck off the highway. So it would have to be ruled as a matter of law that Sheffy was not negligent in that regard.

The next phase of the problem is whether, because the jury found Stone's negligence was the proximate cause of his injury, consistency would require them also to so find as to Sheffy's negligence. The accepted test of proximate cause: whether the injury of the party resulted from his negligence in a manner reasonably to be expected in the natural sequence of events,[2] must be applied to each separately.

As to Stone, the jury could have reasoned that from his negligence in running out of gas so that he could not get his truck out of the position of danger on the highway; and his failure to have sufficient lights burning on the truck, and/or to place flares, it might be foreseen that someone would run into the rear of his truck and injure him, as actually happened; and thus that his negligence proximately caused his injury. But as seen above, the situa-

---

2. See Valasquez v. Greyhound Lines, Inc. et al., 12 Utah 2d 379, 366 P.2d 989.

tion as to Sheffy was significantly different from that of Stone. The jury could have reasoned that the danger to be apprehended from Sheffy's negligence in standing on the driver's (north) side of the truck without keeping a proper lookout was from passing traffic; and that the particular injury he suffered (by the striking of the truck from the rear) was not in any way *caused* by his own acts of negligence. The fact of controlling importance here is that *Sheffy was not hurt by passing traffic, the source from which it could reasonably be foreseen that he might be injured from the negligence he was found guilty of.* Therefore the jury could have thought that he would have been injured in the manner he was whether he had committed that particular negligence or not. More specifically, they could have believed: that he was just as likely to have suffered his injury had he been on the opposite (south) side of the truck and thus not exposed to the danger of passing traffic; and where his failure to keep a lookout would have made no difference; that consequently the particular manner in which he was injured was not reasonably to be expected to follow as a result of his negligence; and thus that his injury was not proximately caused thereby.

If we accept the position which the majority thinks justified: that the jury found Sheffy guilty of the same negligence as Stone in part, that still would not impel the result they reach. Looking at the ques-

tions and answers under the required favorable view to Sheffy, the conclusion cannot be escaped that the only negligence that could possibly be common to both would be as to the non-placement of the flares. It is significant to note that in the questions as to Stone, the two questions as to the failure of lights and as to the flares were combined in question 1C, therefore the jury's answer that this negligence (1C) was a proximate cause could mean that the jury believed that *either* the lack of lights, *or* the lack of flares, or both, was the negligence which proximately caused the collision. The view of this situation most favorable to sustaining Sheffy's verdict is that the jury thought it was Stone's negligence in failing to have the *lights* on the truck, rather than negligence with respect to the *flares*, which proximately caused the collision. This is quite reasonable because even Stone would have had very little time to place flares; and certainly Sheffy would not have had sufficient time. This view would be entirely in accord with the jury's refusal to find that, even if Sheffy were negligent with respect to non-placement of flares, it was not a proximate cause of his injuries.

The problem of proximate cause here presented can be seen clearly if we look at the different components of the negligences of each of the parties separately and designate them by letters as seen in the

diagram below. Stone: A, runs out of gas so his truck stalls on the highway; B fails to have lights and/or C flares.

Sheffy: X fails to place flares; Y, exposes self to danger; Z, fails to keep proper lookout.

From the above diagram, which accurately represents the facts under the required favorable view to Sheffy, it will be seen, as stated above, that the only possible negligent act common to both is the non-placement of flares, represented by the cross-hatched area, CX. In reasoning from this premise to the question of proximate cause, it should be kept clearly in mind that as to each of the separate aspects of negligence, reasonable minds could differ as to whether it was a proximate cause of the collision. That being so, I can conceive of no reason why the questions and answers are not reasonably susceptible of interpretation that the jury found the separate acts of negligence of Stone of A, running out of gas; and B, failing to have lights on, were proximate causes of the collision; and refuse to so find as to the negligence the parties had in

common (the non-placement of the flares) represented by the cross-hatched area, CX. It is conceded that they could refuse to find proximate cause as to the other acts of negligence of Sheffy represented by YZ.

Based upon the foregoing considerations, it seems to me that consistency in reasoning would not compel the jury to find proximate cause as to Sheffy's negligence merely because they found it as to Stone's different negligence.

A far more important point, which I believe should be controlling in this case, is that even if it were necessary to regard the verdicts as to Stone and Sheffy as inconsistent, is that it is both wrong in principle and an injustice to Sheffy to dispossess him of his judgment because a different finding was made in a companion case. That is

something for which he had no responsibility; and so far as he was concerned, was merely an irrelevant co-incidence which occurred because his case was tried along with that of another.

Under proper circumstances consistency undoubtedly has value. It has been referred to as a jewel. But the idea certainly has some limitations. Things can be consistently wrong as well as consistently right; consistently bad as well as consistently good. One must look to the substance behind the consistency before ascribing virtue to it. If we assume that the negligences of Stone and Sheffy were the same, or sufficiently similar to place them in the same position; and that the jury therefore should have found the issue of proximate cause the same as to both of them, then what justification would there be to assume they were right as to Stone, but wrong as to Sheffy? Isn't it just as likely that on the issue of proximate cause they were right as to Sheffy and wrong as to Stone?

Further questions arise which, insofar as I can see, find no answers in the majority opinion. Under such circumstances, why should Sheffy suffer a disadvantage? Must he lose his judgment because Stone lost his case and failed to take an appeal? No sound reason is given for nullifying his verdict. No authority has been cited, and as so far as the writer knows, none can be found to support doing so under these circumstances.

The only case referred to purporting to do so is that of Detrixhe v. McQuigg.[3] It involves a fact situation so completely different that it has only a remote resemblance to our case and stands for no legal precedent applicable here. There, three actions were combined for trial, all of which arose out of one collision. In each of the three actions the negligence of the plaintiffs' car driver, Dick C. Detrixhe, was of importance. The various verdicts involved a finding that he was negligent on one of the verdicts rendered, but that he was not negligent on the other two. Thus, the findings were that the *same person under the same circumstances* was both negligent and non-negligent. It may well be that the ruling that those particular inconsistent verdicts is correct. We are not presently concerned with whether that case was right or wrong in its conclusion. However that may be, it obviously is not analogous to our case and should not be regarded as persuasive.

On the other hand there are soundly reasoned authorities which hold that where cases are joined for trial inconsistency in the jury verdicts is no ground for reversal. The reasoning and the rule are well stated by the Supreme Court of Arkansas in Brown v. Parker:[4]

3. See footnote 3 in Main Opinion.

4. See footnote 1 Main Opinion.

" * * * The law imposes no requirement of consistency upon jurors hearing separate cases which are consolidated for purposes of trial. If such separate cases were being tried separately, by different juries, there would be no assurance of consistency in the verdicts, and no greater assurance of consistency is insisted upon when one jury tries both cases together." (Citing cases.)

The Idaho court follows the same doctrine and makes a very similar statement in the case of Baldwin v. Ewing.[5]

It cannot be questioned that if these cases had been tried separately and two different juries had brought in the verdicts, both would have been sustained. The result should not be different because the two separate actions were tried together and separate verdicts rendered by the same jury. In that regard it is important to realize that the verdict against Stone is not before this court because no appeal was taken from it, and it thus should be of no concern to us. Upon what basis then can we assume that it was either right or wrong? I cannot see how the conclusion can be escaped that we should confine our view solely to the case appealed, that of Sheffy. It is not properly within the province of this court to look behind the verdict and speculate as to the process by which the jury arrived at it; nor is it proper to permit the appellant to divert us aside into the companion case and seize upon a claimed inconsistency for the purpose of nullifying Sheffy's verdict. If we confine our review solely to Sheffy's case, as we should do, and view the evidence, the questions and the answers given in the light most favorable to him, it is unmistakably clear that the verdict would have to be sustained.

Furthermore, it seems to me unquestionable that the action taken by the majority decision is at variance with the spirit and purpose of our new rules of civil procedure which are liberal in allowing the joinder of cases for trial.[6] The purpose is to make the most efficient, economical and convenient use of courts, juries and witnesses in disputes which had common issues of fact and/or law. If the rights of parties are to be in such hazard that whenever an inconsistency exists as to any of the verdicts rendered all results will be nullified, litigants will justifiably make the most determined efforts to avoid such joinder. And the courts, with equal justification, will be reluctant to force parties to accept consolidation because of the likelihood that the joinder will actually defeat the purpose of expediting litigation rather than serving it.

For these reasons I urge that it is both unwise and unjust to set aside Sheffy's ver-

5. See footnote 2 Main Opinion.

6. Rule 42(a), U.R.C.P.

·dict. He has gone to court to seek justice: has invested the time, trouble and expense involved in the filing, preparation and trial of his lawsuit; he prevailed at the trial; and has defended this appeal. To now deprive him of his verdict will force him to the further trouble and expense, as well as the hazards involved in a new trial. In order to do so it is necessary: to go outside the issues of his own case; to indulge in what impresses me as an unjustified interpretation and comparison of the verdict in a companion case to find an inconsistency; and to penalize Sheffy merely because the other plaintiff, for whom he had no responsibility, lost his case. The expropriation of his verdict, as this court's decision does, which, in the final analysis, has resulted because his case was tried along with another, strikes me as an unfair and unwarranted intrusion into his right of trial by jury and the sanctity which should be accorded the verdict he obtained;[7] and more important in the overall purview of the administration of justice, it establishes a dangerous and unsound precedent which will result in similar injustices to others whose rights will be governed by this decision.

For the foregoing reasons I would sustain the jury verdict and the trial court's judgment thereon.

WADE, Chief Justice (dissenting).

7. See statement in Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822.

I agree with the dissenting opinion of Mr. Justice CROCKETT especially "that the verdicts rendered with respect to the contributory negligence of Stone and Sheffy are not *necessarily* inconsistent."

As Mr. Justice CROCKETT points out, there is very little similarity between what Stone did to cause the collision and what Sheffy did. Stone allowed the truck he was driving to stop on a traffic lane of a paved highway without lights or flares. This definitely suggests that his own negligence not only proximately caused the collision with the approaching vehicle which rammed into the parked truck resulting in injury to Stone, but also caused his own injury. On the other hand, all that Sheffy did was to stand by the parked truck to offer assistance when the approaching vehicle rammed into its rear and thereby injured Sheffy. Nothing which Sheffy did in any way caused or contributed in causing the collision. The evidence clearly indicates that Stone's negligence was a contributing proximate cause of the accident by which he was injured; but there is nothing whatever to indicate that Sheffy did anything whatever which caused the collision resulting in his injury. All he did was to place himself in a position where he was injured by this collision.

**214**

To me the question of whether Sheffy was negligent seems entirely different from the question of whether Stone was negligent. The question of whether Sheffy's negligence was a proximate contributing cause of his own injury is closer to, but still different from whether Stone's negligence was a contributing proximate cause of Stone's injury. Since the two questions were different there is no inconsistency in the jury's answers to the interrogatories and we should affirm the judgment in Sheffy's favor.

Further, I think such a question should be left largely in the discretion of the trial court, and a new trial should be granted only on an abuse of its discretion. Such an abuse of discretion would occur only in case there was a clear showing by the Jury's answers to the questions that they were confused and did not understand their problems.[1] Where mere inconsistency in answers given does not tend to show which of the two inconsistent answers was correct, we should be reluctant to set aside a verdict merely because one of two inconsistent answers was the result of the jury's confusion.

Since I conclude that the answers were not inconsistent and therefore there is no showing that the jury was confused, I would affirm the verdict.

[1]. See Utah Rules of Civil Procedure, Rule 49(b), and Milligan v. Capitol Furniture Co., 8 Utah 2d 383, 335 P.2d 619; Mower v. McCarthy, 122 Utah 1, 245 P.2d 224;

Weber Basin Water Conservancy District v. Nelson, 11 Utah 2d 253, 358 P.2d 81; Wellman v. Noble, 12 Utah 2d 350, 366 P. 2d 701.