400 P.2d 564

UNIVERSAL INVESTMENT COMPANY,
Plaintiff and Respondent,

v.

CARPETS, INCORPORATED, Defendant
and Appellant.

No. 10165.

Supreme Court of Utah.

April 1, 1965.

Mabey, Ronnow & Madsen, Gordon
Madsen, Salt Lake City, for appellant.

Pugsley, Hayes, Rampton & Watkiss,.
Zar E. Hayes, Salt Lake City, for respond-.
ent.

CROCKETT, Justice.

Plaintiff sued the defendant for $7,500
damages for breach of warranty on

draperies which defendant had furnished for plaintiff's 100-unit apartment complex known as the Susan Kay Arms in northwest Salt Lake City. A jury found the issues in favor of the plaintiff and assessed damages of $3,750, to which the court added a reasonable attorney fee, as provided by the contract, in the sum of $751.83. Defendant appeals.

We review the evidence and all reasonable inferences that fairly may be drawn therefrom in the light most favorable to the jury verdict and the judgment entered thereon.[1]

As the construction of the apartments referred to was being completed, during the period from October, 1961, to June, 1962, in accordance with the terms of a written contract, defendant furnished and installed some synthetic fabric white draperies. After the installation was complete, at the time of final payment in June, 1962, the defendant executed a written guarantee. It reaffirmed the assurances of the original contract against "latent defects, faulty material and/or workmanship" and extended the guarantee against faulty draperies until September 16, 1963, the projected FHA inspection date. Meanwhile, sometime about April, 1962, while the apartments were still being furnished, the first of the draperies which had been installed began to discolor, taking on darker shades, and showing some spotting and streaking. They were dry cleaned, but the discoloration persisted and continued to become worse. After complaints about this, defendant replaced some of the draperies, but billed the plaintiff for their cost. There were some negotiations between the parties as to the extent of the defects and whether the guarantee covered them, which ended in an impasse and resulted in this lawsuit.

The principal issue between the parties is whether the change in color of the draperies as above described, was a breach of the defendant's warranty. The defendant argues that the warranty mentioning only "latent defects, faulty material and/or workmanship" is literal and exclusive; and that inasmuch as color is not expressly mentioned, is not covered. It is to be conceded that ordinarily the interpretation of the terms of a document is a question of law for the court, but this is not necessarily true in all situations. Where, as here, it is made to appear that the terms may have a particularized application or meaning and there is room for uncertainty and disagreement as to whether the warranty against latent defects or faulty materials includes a guarantee against the type of discoloration that occurred to these draperies, it was proper for the trial court

1. Gordon v. Provo City, 15 Utah 2d 287, 391 P.2d 430.

to regard this dispute as an issue of fact [2] and to allow extraneous evidence by experts in this field as to the generally understood and accepted meaning of that language as used in the transaction in question.

■ In support of its position, defendant presented expert witnesses who testified that according to the custom and practice in the trade the type of warranty above referred to given by defendant does not include fastness of color. On the other hand, plaintiff presented opposing witnesses, a Mr. Thomas Frank and Mr. Gordon Harry, who, on the basis of their knowledge and experience, demonstrated qualifications as experts in this field. The import of their testimony was that the discoloration found in these draperies does constitute a breach of the warranty against latent defects and faulty materials. Notwithstanding the defendant's protestations to the contrary, the jury was entitled to accept and believe the testimony of the plaintiff's experts.

■■ Defendant further singles out as reversible error permitting Mr. Frank to state his judgment as to the difference in value between the draperies as they should have been and after they had become discolored, bearing on the question of damages. It is urged that his testimony is without proper foundation and probative value since he did not see the draperies until after the period of warranty had expired; and in fact not until about two weeks before the trial. Mr. Frank did base his judgment in part upon the assumption that the condition of the draperies when he saw them was the same as during the time when the warranty was in force. However, the fact is that the draperies were described by other witnesses as being in that same condition during the warranty period. The opinion of an expert is not rendered inadmissible because it may be based upon facts proved by the observations of others.[3] In many instances it would be quite impractical for an expert to have firsthand personal knowledge of all of the facts upon which he bases his testimony. His opinion may be based upon other credible evidence which he is willing to accept. Whatever deficiency, if any there was, in the fact that Mr. Frank relied in part upon the statements of others, rather than his own observation of these draperies at exactly the correct time, goes to the credibility, but not to the competency of his testimony.

2. That determination of meaning of contract may be for jury, see Goldring Packing Co. v. H & M' Cattle Company, 15 Utah 2d 372, 393 P.2d 471; and see generally 17A C.J.S. Contracts § 621 (1963).

3. Mangum v. Bullion, etc. Min. Co., 15 Utah 534, 550, 50 P. 834 (1897); see Xenakis v. Garrett Freight Lines, 1 Utah 2d 299, 265 P.2d 1007, 1010–1011 (1954); II Wigmore, Evidence § 681(d), p. 803 (3d Ed. 1940).

██ Defendant also assigns as prejudicial error that in its instruction No. 5 the court deleted by cross-hatching several lines of the instruction as it had been prepared, which left the stricken portion legible. Counsel argues that so treating this portion of the instruction (which he contends is objectionable) would intrigue the curiosity of the jury, and instead of excluding it as intended, would give it emphasis in their minds. We are not impressed with the soundness of this argument. For us to share counsel's distrust of jurors and his suspicion that they would deliberately fail to follow the court's plainly indicated intent as shown by deleting part of this instruction would be neither realistic nor in conformity with the proper judicial attitude toward the jury and its function. It is neither unusual nor infrequent that losing counsel is beset with fears that the jurors have been led astray or have disregarded their duty because of some comparatively inconsequential irregularity which counsel may conjecture as the reason the jury did not agree with him. But we believe that such apprehensions are largely unjustified.

Our own observation and experience, and the fact that the system has worked satisfactorily for so long, confirms the soundness and the wisdom of assuming that the jury is usually composed of citizens who are reasonably intelligent and who will act honestly and conscientiously in the performance of their duties.[4] Inherent in the nature of our system and necessary to its successful operation is acceptance of the jury as a part of the judicial process with its own independent prerogatives. While jurors are, of course, not infallible and are subject to correction by the court if and when the necessity arises, the trial court and this court must necessarily indulge the presumption of their integrity and of the propriety of their conduct until and unless something persuasive is made to appear to the contrary.

██ The argument that defendant's motion for a new trial should have been granted because of newly discovered evidence is likewise unpersuasive.[5] In order to warrant granting such a motion the moving party must meet these requirements: there must be material, competent evidence which is in fact "newly discovered" ; which by due diligence could not have been discovered and produced at the trial; and it must not be merely cumulative or incidental, but it must be of sufficient substance that there is a reasonable likelihood that with it there would have been a different result. Whether these requirements have been met rests largely within the discre-

4. See Lund v. Phillips Petroleum Co., 10 Utah 2d 276, 351 P.2d 952, 955–956 (1960).

5. See Rule 59(a) (4), U.R.C.P.

tion of the court, and unless there is a plain showing of abuse, his action will not be disturbed.[6]

Affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and McDONOUGH, WADE and CALLISTER, JJ., concur.

---

6. See Marshall's U. S. Auto Supply v. Cashman, 111 F.2d 140 (10th Cir. 1940); Crellin v. Thomas, 122 Utah 122, 247 P.2d 264; see generally 6 Moore, Federal Practice, para. 59.08(4) (2d Ed. 1953); 3 Barron & Holtzoff, Federal Practice & Procedure, § 1304 (Wright ed. 1958).