422 P.2d 665

**Karl W. BADGER, Plaintiff and Appellant,**

**v.**

**Paul Taylor CLAYSON, Defendant and Respondent.**

**No. 10517.**

Supreme Court of Utah.

Jan. 23, 1967.

VanCott, Bagley, Cornwall & McCarthy, Grant Macfarlane, Jr., Salt Lake City, for appellant.

Kipp & Charlier, Carman E. Kipp, Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Plaintiff sued to recover damages resulting from a collision between his car and one driven by the defendant. Upon trial to a jury, they answered interrogatories indicating that both parties were negligent. From a judgment of no cause of action entered by the court thereon, plaintiff appeals.

At about 8 o'clock on the morning of December 30, 1963, the plaintiff was traveling east on 45th South, the defendant driving south on 1300 East, in Salt Lake City, approaching the intersection of those two streets, at which there is a traffic light. The yellow caution light facing defendant had come on as he entered the intersection from the north and the light was green for the plaintiff as he entered it from the west.

A fact of considerable importance here is that from the direction these parties approached the intersection, because of a slope downward to the north, and the presence of some trees and shrubbery on the northwest corner, the visibility of these parties for each other as they approached the intersection was impaired so that it was for them a "blind" intersection.

The problem of consequence here is plaintiff's contention that inasmuch as this is a "blind" intersection, the trial court in its Instruction No. 17, particularly the emphasized portions marked [C] and [E], imposed an unrealistic and impractical duty upon him. That instruction states:

You are instructed that even though the operator of an automobile has the right-of-way, he still has the duty to keep and to maintain a reasonable, proper, and adequate lookout and [A] *to use reasonable and ordinary care* to avoid a collision. One who has the right-of-way must use due care while crossing and must continue to keep a [B] *reasonable lookout* and [C] *reappraise the situation as he approaches an intersection* and [D] *use reasonable and ordinary care under the circumstances* to avoid a collision as he proceeds.

There is imposed upon a driver the duty to be aware of the relative positions and speeds of vehicles approaching and he must [E] *recurrently reobserve and reappraise in the light of the consistent*

*changing conditions* of a fluid traffic situation. Therefore, even if you should find from the evidence in this case that either driver had the technical right-of-way, you should also consider that such right-of-way is a relative right only, and if he was careless in [F] *failing to keep and continue to keep a reasonable and adequate lookout or failed to exercise reasonable and ordinary care under the circumstances* to avoid a collision and that such negligence, if any proximately contributed in any substantial degree to cause the collision, he would be negligent. (Emphasis and letters ours.)

 For the purpose of considering the effect of the foregoing instruction we accept the plaintiff's averment that it would have been impractical for him to "* * * recurrently reobserve and reappraise conditions as he approached the intersection" and that the portions of the instruction marked [C] and [E] are subject to criticism as not being adapted to the particular facts of this case. But the question whether reversible error was committed is not dependent on whether some mistake or impropriety is demonstrable by looking at a separate part of one of the instructions as if the whole case depended upon it.[1] The instruction should be considered in its entirety, and along with all of the other instructions given, to determine whether they accomplished what is essential: explaining to the jury in a manner understandable to them the issues of fact and the law applicable thereto with reasonable accuracy, and with fairness to both sides.[2]

Refocusing attention on Instruction No. 17, in the light of the principle just stated, it will be noted that the other emphasized portions designated [A], [B], [D] and [F], which include both the beginning and the conclusion of the instruction, state the correct standard: of reasonable care under the circumstances. Furthermore, there is actually nothing in the instruction inconsistent with that standard. Again assuming that the criticized portion of the instruction is not specially adapted to the particular facts, there is plausibility to the idea that due to the special hazard in approaching a blind intersection, the standard of reasonable care might well demand special caution to be alert for oncoming traffic; and that the jurors, who are presumed to be people of ordinary intelligence who would apply the instructions to the evidence,[3] would know to what extent the parties could or could not "reobserve and reappraise"; so that if in the exercise of reasonable care they could not see the other party, no such duty would be demanded.

1. Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287 (1953).
2. See Wilson v. Gardner, 10 Utah 2d 89, 348 P.2d 931, 934 (1960).

3. Universal Investment Co. v. Carpets, Inc., 16 Utah 2d 336, 340, 400 P.2d 564.

In addition to the fact that Instruction No. 17 itself seems grounded firmly enough upon the standard of reasonable care, that standard of conduct was also clearly set forth in several other instructions: in Instruction No. 11 which defines negligence; in Instruction No. 12 which further explains reasonable care; and Instruction No. 16 which points out that the duty is not to guard against extraordinary or unexpected dangers, but only against those which could reasonably be anticipated.

There are other aspects of the instructions which have a bearing upon the problem here under consideration. Although Instruction No. 17 was given at the defendant's request, the trial judge in a plainly apparent effort to be fair to both sides, so modified it as to make it apply as stating the general duty of both drivers in approaching the intersection, so there was no greater duty imposed upon the plaintiff than upon the defendant. In addition to the numerous statements to the jury above referred to, that the standard to be applied was that of reasonable care, they were similarly so instructed concerning the plaintiff's right of way under his theory of the evidence. In Instruction No. 15 the court told the jury that "one who enters the intersection on a green signal [plaintiff] has the right of way over traffic approaching on the cross street [defendant] and has the right to assume that such traffic will not enter the intersection against the red signal, and he may continue to rely upon such assumption until he sees, or in the exercise of reasonable care should have seen, that the other vehicle is going to proceed against the signal." [4]

 We are not persuaded that the trial court was in error in submitting to the jury the issues of negligence of the defendant, contributory negligence of the plaintiff, and proximate cause as to each because, depending upon whose evidence they believed, they could reasonably find either way on those issues.[5] From what we have said above, it should be apparent that we believe that the instructions which were given fulfill the purpose we have stated elsewhere in this opinion; and that even if there may have been some defect in a part of one of them, when they are all considered together, there was no error of sufficient consequence that there is "any reasonable likelihood that the [plaintiff] did not have a fair trial and that the result would have been different in the absence of such error." [6]

4. See Howe v. Jackson, 18 Utah 2d 269, 421 P.2d 159.
5. Therefore differing from the case of Larson v. Evans, 12 Utah 2d 245, 364 P. 2d 1088, as a reading of that decision will demonstrate.
6. See statement in Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822, that after the parties have had a fair trial all presumptions favor the judgment.

Judgment affirmed. Costs to defendant (respondent).

TUCKETT, J., and JOHN F. WAHLQUIST, District Judge, concur.

HENRIOD, Justice (concurring).

Appeal from a judgment based on a jury verdict of no cause of action.

The crux of this case revolves around one instruction given by the court supplemented by interrogatories presented to the jury. The jury decided six to two in favor of Clayson. Had this writer been on the jury, he is inclined to the conclusion reached by the two dissenting jurors. But that cannot substitute for our jury system.

This was an intersection collision. Clayson was traveling south at 25 to 35 miles per hour on a street that intersected with one upon which Badger was traveling east at right angles and within the lawful speed. The intersection was a so-called "blind" one, since Clayson's approach on his street, which was considerably uphill, was such as to obscure eastbound traffic because of an embankment, house and foliage, and vice versa, with respect to Badger. An electric semaphore controlled the intersection.

This case is to be canvassed in a light more favorable to the one prevailing and needs no repetition of such cliché by citation of previous pronouncements.

We start out with a concession by everyone that this intersection was quite hazardous. Clayson negligently entered it on an amber light and was in the intersection on a red light when the impact took place. It appears that thereafter Badger was in there on a green light. Question is whether, with a possible green light in his favor, prudently he could travel through at a legal rate of speed, without slowing down below that speed and without looking to his left, *which he admitted he did not do.*

The trial court instructed that "There is imposed upon a driver to be aware of the relative positions and speeds of vehicles approaching and he must recurrently reobserve and reappraise in the light of the consistent changing conditions of a fluid traffic situation." There seems to be no harm in such an instruction in the ordinary intersection case, and could be under the circumstances here where the plaintiff knew the intersection was very dangerous, did not slow down, conceded that he did not look, and entered the intersection after the defendant had entered it, but here the intersection was unusual where neither driver could see the other coming until he got to or in the intersection. Both of the drivers knew of the dangerous and hazardous nature of this particular "blind" intersection, —and both, knowing of this, with the split-minute change in mechanical semaphore signals, may have had a duty to slow down below the posted speed limits. *Neither did.*

The physical facts appear to me to indicate that perhaps look or not, Badger hardly could have avoided the incident at the rate he was traveling. The jury, as fact-finders, in whom our system reposes this function, after six hours of deliberation, thought otherwise, on facts that were not so clear and conclusive as to require reversal for caprice or as a matter of law

This is a very close case. It points up the confusion that sometimes likewise points up a need for caution in the employment of special verdicts. This writer thinks the general verdict advisable in most cases, where possible. Nonetheless, the procedure of the trial courts, under our own rules, is perfectly within their rights and duties if they use the special verdict approach. Some cases demand it, but it appears that the intended use of such proscriptive procedure may be overworked.

We cannot say that the jury was capricious in this case because it said Badger, under the particular facts here, did not keep a proper outlook, but I would venture a guess that there may have been a different conclusion, under a general verdict.

The jury in answering the questions, *did not say Clayson ran a red light, but only that he was in the intersection when the light turned red. Also, that Badger did not look to the left at a hazardous intersection,* (of which the parties conceded they were

1. 12 Utah 2d 245, 364 P.2d 1088.

aware). It is difficult to distinguish this case from Larson v. Evans,[1] but at least there is some difference: In the latter case the plaintiff *did* see the defendant's car before either entered the intersection, whereas the plaintiff in the instant case admitted that he did not even look. In the Larson case, the plaintiff took evasive action. The plaintiff here took none.

This is a very close case, and reluctantly I concur for the observations hereinabove stated only, and not because of any curative effect of other instructions as stated in the main opinion.

CALLISTER, Justice (dissenting).

Under the particular circumstances of this case, the plaintiff's proceeding with a green light and his inability to perceive approaching vehicles because of the physical characteristics of the intersection, the disputed instruction imposed a duty far beyond the magnitude of reasonable and ordinary care to avoid a collision. In order to comply with the duty imposed by the instruction, the plaintiff would be compelled to stop at the intersection, on a green signal, and observe the cross street for approaching traffic. This duty is at an obvious variance of that of acting as a reasonably prudent man under the circumstances

The facts of this case are substantially similar to those in Larson v. Evans.[1] In

1. 12 Utah 2d 245, 248, 364 P.2d 1088, 1090 (1961).

that case the defendant failed to observe a stop sign and collided with a vehicle in the intersection. The plaintiff had the right of way, and the drivers were unable to see each other until shortly before entering the intersection because of the obstruction created by a dense hedge. The jury rendered a verdict of no cause of action. The trial court denied plaintiff's motion for new trial because it observed that the plaintiff could have and should have stopped, short of impact, had he been watching to the right and had he taken cognizance of the approach of the defendant's car at twice his own speed and giving no sign at any point of intending to slow down or stop for the stop sign.

This court stated:

This reasoning misconceives the duty which a driver having the right of way normally has in keeping a proper lookout for other drivers who, to his knowledge, are under a legal obligation to bring their vehicles to a stop. The reasoning is applicable in a situation where the driver having the right of way has, or should have, become aware that the other vehicle is not going to stop. The proper rule is stated in Johnson v. Maynard:[2]

"A traveler approaching a signal-controlled intersection with the light in her favor has the right of way and can rely on it until something appears to indicate it is not safe to do so."

In the instant case, Instruction No. 17, under the unusual circumstances, was prejudicial to the plaintiff. This case should be reversed and remanded.

2. 9 Utah 2d 268, 342 P.2d 884, 885.