**STATE of Utah, Plaintiff and Appellee,**

v.

**Leland ANDERSON, Defendant and Appellant.**

**No. 890228.**

Supreme Court of Utah.

Aug. 16, 1990.

R. Paul Van Dam and David B. Thompson, Salt Lake City, for plaintiff and appellee.

Milton T. Harmon, Nephi, for defendant and appellant.

HOWE, Associate Chief Justice:

Defendant appeals his conviction and sentence for attempted sodomy of a child, a first degree felony, in violation of Utah Code Ann. §§. 76–5–403.1 and 76–4–102(2).

On July 7, 1988, defendant invited two boys into his motel room under the pretense of earning a dollar and requested that they engage in sodomy with him. The boys refused and left the room, unrestrained by defendant. They reported the incident; one boy's mother called the police, who arrested defendant shortly thereafter.

Defendant entered a plea of insanity or diminished mental capacity. He underwent psychiatric examination by two alienists who testified at trial that he suffered from permanent brain damage but was not insane according to the legal definition of insanity. Both experts gave definitions of diminished mental capacity. The first expert testified that defendant had the ability to form some intent but this ability was impaired, which may entitle him to the defense of diminished capacity. He testified that defendant knew what he was doing and that what he was doing was wrong. The second expert agreed that there was some impairment which could affect defendant's intent to commit the crime and opined that the defense of diminished mental capacity was available.

Among the trial court's instructions to the jury was the text, with minor changes, of Utah Code Ann. § 76–2–305. This instruction defined mental illness as "a mental disease or defect" and stated that it was a defense if defendant "lacked the mental state required as an element of the offense charged." The instruction further stated in accordance with subsection (2) that the mental illness defense "includes the defenses known as 'insanity' and 'diminished mental capacity.' " The jury was also instructed on the lesser included offense of lewdness.

The jury found defendant "guilty and mentally ill." The trial court held a hearing pursuant to Utah Rule of Criminal Procedure 21.5(2)(b) and (3), formerly Utah Code Ann. § 77–35–21.5(2)(b) and (3), to determine defendant's present mental state, his sentence, and the place of his commitment. The court sentenced him to the Utah State Prison for a minimum mandatory term of five years and which could be for life pursuant to section 76–5–403.-1(2).

Defendant raises three issues on appeal, the first of which is whether his minimum mandatory sentence violates the constitutional prohibition against cruel and unusual punishment. The State points out that defendant was incorrectly sentenced under the minimum mandatory sentencing scheme which applies to the *completed* crime of sodomy. Defendant's sentence must be vacated and the case remanded to the trial court for resentencing in accordance with Utah Code Ann. § 76–3–203(1). This renders moot defendant's first issue.

The second issue raised by defendant concerns his commitment to prison rather than to a mental hospital. He contends that he is being denied his constitutional right to treatment for his mental disorder under the rationale of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). However, we stated in *State v. Bishop*, 717 P.2d 261, 268 (Utah 1986):

> *Estelle v. Gamble* . . . does not hold, as suggested by the defendant, that the cruel and unusual punishment provision requires immediate psychological or psychiatric treatment for all who assert a need for such treatment. *Estelle* held that "deliberate indifference to serious medical needs of prisoners" could constitute cruel and unusual punishment. [429 U.S.] at 104, 97 S.Ct. at 291. That rule has been extended to include psychological or psychiatric care as well as physical medical care.
>
> . . . .

... A conviction of guilty and mentally ill does not *ipso facto* entitle the defendant to be committed to the state hospital rather than the state prison. Whether the defendant is entitled to psychiatric treatment as a matter of right at this time is a factual issue that would have to be explored in an independent proceeding.

(Citations omitted.)

▮ Defendant, having been found guilty and mentally ill, was entitled to a hearing under Utah Code Ann. § 77–35–21.5.[1] This statute "contains a specific objective test to determine whether a defendant is to be sentenced to the hospital or to the prison" and "gives the trial judge little discretion." *State v. Copeland,* 765 P.2d 1266, 1274 (Utah 1988). The required criteria are set forth in section 77–35–21.5(4) (Supp.1988), which provides:

The court shall in its sentence order hospitalization at the Utah State Hospital or other suitable facility if, upon completion of the hearing and consideration of the record, the court finds by clear and convincing evidence that:

(a) the defendant has a mental illness as defined by Subsection 76–2–305(4);

(b) because of his mental illness the defendant poses an immediate physical danger to others or self, which may include jeopardizing his own or others' safety, health, or welfare if placed in a correctional or probation setting, or lacks the ability to provide the basic necessities of life, such as food, clothing, and shelter, if placed on probation;

.    .    .    .    .

(e) the Utah State Hospital or other suitable facility can provide the defendant with treatment, care, and custody that is adequate and appropriate to the defendant's conditions and needs.

*See Copeland,* 765 P.2d at 1271–72 (subsections (c) and (d) stricken as unconstitutional). The sentencing court carefully weighed the evidence and found that criterion (b) had not been met:

Dr. Washburn, it appears to the Court, is somewhat ambivalent in his opinions with respect to that. Dr. Howell states[,] "[A]t the present time I do not believe that Mr. Anderson is an immediate physical danger to others or himself, which may include jeopardizing his own or others' safety, health or welfare, if placed in a correctional probationary setting, or lacks the ability to provide the basic necessities of life such as food, clothing or shelter if placed on probation." Consequently, in view of that disputed evidence and testimony, the Court does not believe that it could find by clear and convincing evidence that that criteri[on] has been met.

"On appeal, we do not disturb the conclusions of the trier of fact unless they are clearly erroneous." *State v. DePlonty,* 749 P.2d 621, 627 (Utah 1987); Utah R.Civ.P. 52(a). Defendant did not "prove by clear and convincing evidence that treatment at the mental hospital would be appropriate." *DePlonty,* 749 P.2d at 627. The court therefore properly committed him to the Utah State Prison.

▮ Finally, defendant complains of several errors in the jury instructions. However, we will consider only those alleged errors which he objected to at trial. He first contends that the trial court erred by failing to include in the verdict forms furnished the jury a form for a verdict of "not guilty by reason of diminished mental capacity." That was not error. Such a verdict would run counter to the view this court expressed in *State v. Sessions,* 645 P.2d 643, 645 (Utah 1982): "Although insanity is a complete defense, § 76–2–305, diminished capacity is not. Like intoxication, see § 76–2–306, diminished mental capacity may negate the existence of a particular intent, but when it does, a defendant is not usually thereby absolved from all criminal liability." One year after *State v. Sessions* was decided, the legislature codified the permissible verdicts in cases such as the one before us:

**1.** The statute was amended by 1989 Utah Laws chapter 246, section 3 to provide for commitment to the jurisdiction of the Psychiatric Security Review Board. The statute quoted above was in effect at the time of the sentencing hearing.

If a defendant at trial asserts a defense of "not guilty by reason of insanity," the court shall instruct the jury that it may find the defendant guilty, not guilty, not guilty by reason of insanity, guilty and mentally ill, guilty of a lesser offense, or guilty of a lesser offense due to mental illness but not an illness which would warrant full exoneration.

Utah Code Ann. § 77–35–21.5(2)(a); *see also* Utah Code Ann. § 77–35–21(a). No provision is made in the statute for the verdict defendant requests. A verdict form was provided, in accordance with the statute quoted above, that stated that defendant may be found "[g]uilty of the [l]esser included offense of [l]ewdness involving a child due to mental illness but not an illness which would warrant full exoneration." This verdict form comports with defendant's theory of the case. It was not error for the trial court not to allow the inaccurate verdict of "not guilty by reason of diminished mental capacity."

Defendant's second specific objection was to the lack of complete instructions regarding voluntary intoxication. The trial court covered the substance of subsection (3) of section 76–2–305 in its instruction No. 15. This subsection provides: "A person who is under the influence of voluntarily consumed or injected alcohol, controlled substances, or volatile substances at the time of the alleged offense is not excused from criminal responsibility on the basis of mental illness."

Defendant complains that the trial court did not additionally cover section 76–2–306 in its instruction. This section clarifies that voluntary intoxication *is* a defense if it "negates the existence of the mental state which is an element of the offense." We fail to see how this omission could have prejudiced defendant, since his defense was not voluntary intoxication; it was that permanent brain damage had resulted in diminished capacity, which negated the intent element of the offense. Voluntary intoxication was not an issue at trial. Defense counsel pointed out in closing argument that "we have had no evidence ... that Mr. Anderson was intoxicated or drunk at the time of the incident." The instructions,

taken as a whole, fully explained defendant's theory of the case. *See Simpson v. General Motors Corp.*, 24 Utah 2d 301, 305 n. 5, 470 P.2d 399, 402 n. 5 (1970) (an instruction should be considered in its entirety and along with all of the other instructions); *Badger v. Clayson*, 18 Utah 2d 329, 332, 422 P.2d 665, 667 (1967); *see also State v. Laine*, 618 P.2d 33, 35 (Utah 1980) (instructions were "taken as a whole" to show that the jury was informed of all elements of the offense, and each element was proved beyond a reasonable doubt).

The conviction is affirmed. The sentence is vacated, and the case is remanded to the trial court for resentencing.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.