342 P.2d 884

Amy P. JOHNSON, Plaintiff and Appellant,

v.

William T. MAYNARD, Defendant and Respondent.

No. 8727.

Supreme Court of Utah.

July 30, 1959.

Clyde & Mecham, Bryce E. Roe, Salt Lake City, for appellant.

LeRoy B. Young, Paul Thatcher, Ogden, for respondent.

McDONOUGH, Justice.

This action is for personal injuries plaintiff suffered when her car was struck by an official police car, driven by the defendant, a police officer, in an intersection in the downtown business area of Ogden, Utah. From judgment entered upon a verdict of no cause of action, plaintiff appeals.

The action occurred November 21, 1955, on a rainy day, during the noon rush hour. The defendant, in answer to an emergency call pertaining to a fatal accident that had just occurred, was proceeding north along

Ogden's main street, Washington Boulevard; the plaintiff was approaching· that street from the west along 27th Street. When defendant received the call. he was about 350 feet south of the intersection; he turned on his red signal light and stepped on his siren button as he proceeded northward. The siren died down while he was shifting into second to pick up speed. He moved into the center lane about 200 feet south from the point of impact, and he said he was traveling just under 40 m. p. h. Witnesses placed the plaintiff's speed as very slow (between 5 and 7 m. p. h.) and it is conceded that the green traffic light was in her favor and against the defendant. Just as she passed the center of the intersection the defendant's car struck her car on its right side just behind the center door post. She suffered considerable·injury, including a concussion, resulting in loss of memory so that she has been unable to remember anything about the details of the accident and for some time preceding it.

The evidence unquestionably would support a finding of negligence against the defendant, even though he was responding to an emergency call and while operating his red signal light and siren was exempted from certain usual traffic rules, insofar as material here: from speed regulations and obeying traffic lights. But the statute also provides that this "shall not relieve the driver * * * from the duty to drive with due regard for the safety of all persons * * *." under the circumstances.[1]

The defendant seeks to support the verdict and judgment in his favor on the basis of the contributory negligence of the plaintiff. This is based upon the argument that after he pulled into the center lane 200 feet south of the collision the plaintiff had a clear opportunity to see·him approach; that consequently she is impaled upon the rule that she either failed to look or looked and failed to heed and therefore must be deemed contributorily negligent as a matter of law.

Two basic problems are presented by this appeal: (1) does the evidence· compel a finding that plaintiff was contributorily negligent as a matter of law; (2) was the case submitted to the jury in such a manner as to have a proper determination of the issues?

Conceding that the defendant's emergency vehicle was plainly visible to the plaintiff so she could have seen it if she had looked, that does not necessarily provide the full answer to the problem of contributory negligence under the circumstances. here shown. A traveler approaching a signal-controlled intersection with the light in her favor has the right of way and can rely on it until something appears to indicate it is not safe to do so. It is, of course, true that she cannot assume full protection

1. Sec. 41–6–14(b) U.C.A.1953.

by the traffic light and remain oblivious to cars approaching against it. But it is to be kept in mind that the management of an automobile in downtown traffic demands an awareness of a number of things so that she cannot be giving her full attention to any particular hazard.[2] She must be paying some attention to the actual operation of her car and also be aware of possible hazards from a number of directions; to the road ahead and any possible obstacles therein, or pedestrians who may be in or approaching the crosswalk; to traffic which may be approaching from the east and/or turning right or left in the intersection. It is because of these numerous hazards and to facilitate an orderly flow of traffic that traffic lights are installed. They permit the motorist to enter the intersection with some assurance of safety when the traffic light is in his favor. Being under the obligation to divide her attention to the numerous hazards just adverted to, plus the assurance that she might reasonably take from the fact that the traffic light was presumably holding any traffic from entering the intersection from the south, the trial court correctly determined that reasonable minds might find that in entering the intersection, as plaintiff did, she was within the limits of due care under the circumstances and consequently the question of her contributory negligence was one of fact for the jury.[3]

 Numerous errors are assigned in the instructions, the most vital of which relate to the submission of the issue of assumption of risk. In Instruction No. 4 the court told the jury, "If you find * * * that the plaintiff assumed the risk of crossing the intersection * * * your verdict must be in favor of the defendant and against the plaintiff * * *" and also in No. 7 stated to them, "One who has thus assumed a risk is not entitled to recover damages."

In giving the foregoing instructions the trial court fell into the error of confusing the doctrine of assumption of risk with contributory negligence. While in some instances the phrase "assumption of risk" is used in defining the rights of parties where both plaintiff and defendant are charged with negligence, in such situations the rights and duties involved rest upon principles of negligence and contributory negligence. The doctrine of assumption of risk in many instances overlaps into the field of contributory negligence; but it must be distinguished and applied only in a proper case, that is, when the question involves the reasonableness of plaintiff's voluntary action in the face of a known danger.[4]

2. Martin v. Stevens, 1952, 121 Utah 484, 243 P.2d 747; Coombs v. Perry, 1954, 2 Utah 2d 381, 275 P.2d 680.

3. Ibid.
4. Prosser, Torts, p. 304 (1955).

272

Assumption of risk was originated primarily and had its principal focus in actions by workmen against employers for injuries incurred in employment.[5] At a time when the courts were prone to protect employers, the concept was developed to insulate the employer as much as possible from bearing the costs of the "human overhead" in injury and death which result from carrying on industrial business.[6] The harsh results of such policy were in part responsible for workmen's compensation acts which are based on quite the opposite philosophy: that the cost of industrial accidents should be distributed among the beneficiaries of the enterprise that takes the toll.[7] There are some areas of the law in which the doctrine of assumption of risk still holds full sway.[8] But there has been a substantial transition in its concept and application. It is appreciated that it is not now limited strictly to situations where contractual, or master and servant relationship exists, but it may be applied in any case falling properly within its pattern. The fundamental consideration underlying it is that one should not be permitted to knowingly and voluntarily incur an obvious risk of personal harm when he has the ability to avoid doing so, and then hold another responsible for his injury.[9] Its essential elements are: knowledge of a danger and a free and voluntary consent to assume it.[10]

Under any reasonable view of the evidence here the conduct of the plaintiff would not fall within the requisites of the doctrine of assumption of risk. This was the type of hazard which would exist at practically every intersection where there is much traffic. It is not shown that plaintiff was aware of the particular danger involved in the approach of the defendant's car, nor that having such knowledge, she nevertheless assumed the risk of such danger and proceeded. The true issue of fact to be determined as to her conduct was the usual one: did she use the care which an ordinary, reasonable and prudent person would have done under the circumstances. That is, was she guilty of contributory negligence.

The defendant argues, however, that the instruction submitting the issue of assumption of risk was not prejudicial because in essence it only imposed upon the plaintiff the same duty as she bore under the doctrine of contributory negligence. An analysis of the instructions reveals that this

5. Bohlen, Voluntary Assumption of Risk, 20 Harv.L.Rev. (1906); Warren, Volenti Non Fit Injuria in Actions of Negligence, 8 Harv.L.Rev. 457 (1895).

6. Black, J., in Tiller v. Atlantic Coast Line Ry. Co., 1943, 318 U.S. 54, 59, 63 S.Ct. 444, 87 L.Ed. 610.

7. Harper and James, Torts, Vol. 2, p. 1163–92 (1956).

8. Id. at 1179.

9. See note 2, supra.

10. Clay v. Dunford, 1952, 121 Utah 177, 239 P.2d 1075.

contention is unsound. The concluding portion of Instruction No. 7 stated, " * * * but assumption of risk * * * will bar recovery * * * although it plays no part in causing the accident except merely to expose the person to danger." Thus the jury may have believed that the plaintiff exercised due care under the circumstances and yet was barred from recovery because she assumed a risk, when there is no proof whatsoever that she did so.

It is further to be observed that the court did not correctly instruct the jury on assumption of risk had it been applicable. In the first portion of Instruction No. 7 he correctly imposed the requirement that, "she freely, voluntarily and knowingly manifest * * * her assent to dangerous conduct * * *." but later in the same instruction explained that it would be applicable if the plaintiff knows, " * * * or in the exercise of ordinary care *would know,* that danger exists * * *." The latter statement is in error because it would permit a finding of assumption of risk, exonerating the defendant from liability, without actual knowledge of such danger on the part of the plaintiff.

Inasmuch as this issue was introduced into the case which would have permitted the jury to determine their verdict on a doctrine which had no application to the facts of the case, we are unable to agree with the defendant's contention that the error was not prejudicial. This conclusion renders it unnecessary to consider numerous other errors assigned with respect to the instructions and compels us to remand the cause with instructions to grant a new trial.

One further assignment of error merits attention: during the deliberations of the jury the bailiff brought word to the judge that the jury wanted advice upon the distinction between "act of God" and "unavoidable accident." In response thereto the trial judge went into the jury room to advise them upon that matter. This was done in the absence of and without the consent of counsel. Immediately thereafter the judge advised counsel and included a general statement as to what was done in the record. Defense counsel, but not plaintiff's counsel, made objection thereto. Although there is no question that the judge acted with the best of intentions, such conduct was improper. After the jurors have retired to deliberate their privacy is sacrosanct. It is their exclusive prerogative to determine the facts in their deliberations. For this purpose the privacy of the jury room should be preserved from influence from outside sources or any semblance thereof. Our rule 47(n) is explicit as to the procedure to be followed: "After the jury have retired for deliberation * * * if they desire to be informed on any point of law * * * they may require the officer to conduct them into court * * *

the information required must be given in the presence of, or after notice to, the parties or counsel * * * [it] must be given in writing or taken down by the reporter."

Reversed. Costs to appellant.

CROCKETT, C. J., and WADE, HENRIOD and CALLISTER, Jr., JJ., concur.