371 P.2d 851

Cecil R. MARTIN, Plaintiff and Respondent,

v.

Carl EHLERS, Defendant and Appellant.

No. 9565.

Supreme Court of Utah.

May 21, 1962.

2. Cobia v. Roy City, 12 Utah 2d 375, 366 P.2d 986.

Hurd, Bayle & Hurd, Wallace R. Lauchnor, Salt Lake City, for appellant.

Rich & Strong, Lawrence L. Summerhays, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a damage verdict incident to an intersection collision between two cars. Reversed, with costs to defendant.

From an examination of the record with due regard to the evidence favoring plaintiff, together with undisputed facts shown, the following, we believe, represents an accurate review of the facts in abstract form:

Defendant, a peace officer, responded to an emergency call. From the time he started his car to the time of collision, his red warning light and siren were operating. He had been traveling south toward the intersection at about 5:30 p. m. on a clear day, the intersecting streets being level and about 40 feet wide, sufficient to accommodate two lanes of traffic. At the time of his approach there were two lanes of southbound and northbound traffic stopped for a red light, and plaintiff conceded that there was at least one car facing west, either parked or waiting for some other reason. Plaintiff was proceeding east at about 30 m. p. h. with a green light in his favor just prior to and at the time of impact with defendant's car, which was hit broadside by plaintiff's car slightly within the southeast quadrant of the intersection. Defendant, traveling somewhere between 35 and 40 m. p. h., skirted the southbound traffic that had stopped at the intersection in response to the traffic semaphore. Plaintiff's car, eastward bound, had not reduced speed at any time before the impact, from the time plaintiff first observed the green light in his favor some 50 to 100 feet to the west. Neither driver saw the other except momentarily before the collision.

Two volunteer witnesses, neither of whom knew the principals, had stopped at the intersection, facing south. The one in the forefront said he heard the officer's siren and saw his car and the red signal light approaching about 500–600 feet behind him. The other witness who was

stopped immediately behind the first said he heard the siren when the officer's car was three or four car lengths behind him. The first witness testified that he had stopped for the red light as had other north and southbound traffic, and that after hearing the siren, he remained stationary throughout a full green light cycle for southbound traffic, and did not proceed at all; that the red semaphore light again turned red, after which the accident occurred.

■ Plaintiff said he neither saw the officer's red warning light, which was attached to the right side at the bottom of the officer's windshield, nor did he hear the siren, although his window was down. That he saw no red light on the officer's car seems credible in the light of what may have been a vision obstruction due to the southbound lines of cars stopped for the traffic light, but his testimony that he did not hear the siren, taxes one's imagination. One of our problems is whether, under the circumstances here, and as a matter of law, plaintiff had the means of hearing but did not hear, or having heard, carelessly did not heed that which everyone else in the vicinity seems to have heard and heeded. We think he was negligent as a matter of law under the reasonable, prudent man principle, and that he cannot be inoculated against the principle's implications by the simple statement that he did not hear what appears to have been audible to others at the scene, particularly to two complete strangers who volunteered to attest to such fact. Were we to espouse any theory that one is immune from his actions simply because he asserts that he did not hear anything as audible as a police siren within a few hundred feet at most, it would be to favor the hard of hearing as against the normal, and would fracture the traditional standard of care attributed to the reasonable, prudent man concept. Even with such imperfections as that doctrine might possess, and cognizant of the fact that the jury system does not always function in perfection, those legal materials have gone to fashion the best yardsticks that have contributed to law and order, in our opinion.

With great deference to our jury system, and with recognition that we sometimes incline to approach matters aphoristically, we must review cases in the light of the legal principles we espouse and discard reverence for a fact-finding agency, where we are convinced it has erred. Here, we believe, is a case where that rather rare occasion must be met with reversal and without equivocation.

As to a second aspect of this case which we believe justifies reversal, we have the following to say: As a result of interrogatories put to the jury by the learned trial judge, the veniremen replied that the peace officer 1) had his car under proper control; 2) was negligent in not keeping

a proper lookout, which was *not,* however, a proximate cause of the accident; 3) but that his *speed* was the proximate cause thereof.

■ We must assume, then, that the officer had his car under safe and proper control; that failure to keep a proper lookout was not causative of the accident, and that the only possible negligence attributable thereto was *speed.* Under the circumstances here, the officer, in responding to an emergency requiring haste consistent with safety, 40 miles per hour reasonably could not of itself be deemed excessive, unless coupled with failure to control his car, or to keep a proper lookout. We think and hold that the jury, as a matter of law, was in error by inconsistently finding defendant negligent because of speed alone. The legislature eliminated speed as a factor applicable to operation of emergency vehicles in intersections. Emergency vehicles, under the statute, are exempt from ordinary "rules of the road," and their drivers are not required to reduce speed at a red light, if they otherwise comply with the interdictions of the legislation. They are required to sound an audible signal and display a red light warning signal, and otherwise to exercise reasonable circumspection for the safety of others. Without contradiction, defendant employed both the red light and the siren,

and the jury's inconsistency lay in finding a failure to do something the statute does not require, while finding that the driver did what the statute required, or, that in failing to comply, his action was not a cause of the incident.[1]

Under the facts of this case, we believe and hold that with the quantum and quality of proof adduced, it would be unrealistic and judicially incorrect to hold other than that the plaintiff either must have heard and didn't heed, or didn't heed what he should have heard as a reasonable, prudent person. This, with all respect and recognition of what we have said in the past about negligence, contributory negligence and proximate cause ordinarily being matters for determination by the fact finding agency in an orderly, judicial process. Highest regard for what we think is the best judicial system available, cannot sanction the luxury of inconsistency or myopia.

WADE, C. J., and CALLISTER, J., concur.

CROCKETT, Justice (dissenting).

I dissent. The order upsetting the jury verdict and the trial court's judgment thereon can be justified only if they are outside the pale of reason. While I and other members of this court may or may not

1. Title 4–16, Utah Code Annotated 1953, and its amendments, particularly with respect to emergency vehicles' exemption from ordinary traffic regulations.

have reached the same result on the evidence, I do not see how it can be concluded with positive assurance that no reasonable minds acting fairly on the evidence could have done so.

The recent case of Johnson v. Maynard [1] is so closely analogous to the instant case in its material facts that the legal issues presented are identical. We there reversed the trial court's refusal to submit the case to the jury. The conclusion cannot be escaped that the principles therein announced are controlling here. There is nothing in the majority opinion which distinguishes that case from this one nor which suggests the wisdom of ignoring or overruling it. On the contrary, there are several considerations there discussed which are of significance here and impel me to believe that the trial court correctly ruled the case to be one for the jury.

There is no question about the soundness of the rule which is applicable under usual circumstances that one must avoid a danger which is plain to be seen or be held negligent either for not looking or for not heeding it. But that rule is only a specialized application of, and must be applied in an awareness of, the more fundamental tort rule: that one must observe that degree of care which an ordinary, reasonable and prudent person would observe under the circumstances. In applying that rule to the instant situation, it should be kept in mind that there is a considerable difference between perception by sight and by sound. What is perceived by sight is many multiples more than by hearing. If an automobile or other substantial obstacle passes in front of one, he can't help seeing it. But if something prevents him from seeing it, it is quite possible that his attention may be otherwise engaged so that he does not hear or heed such a sound. The amount one hears, and the significance the sounds may have for him depend upon a number of factors, including where his attention is at the time. When attention is focused on other matters; such as the driving of one's car; other traffic; and the semaphore light, sounds even such as a siren may fuse into other noises so that it may not arrest attention as quickly as might be desired. This is shown by the testimony of the other drivers, as related in the majority opinion. One testified that he heard the siren some 500 to 600 feet away; while the other said that he heard it only 60 to 80 feet away. Their cars were both stopped, so they were in a better situation to hear a siren than was the plaintiff.

It seems to me that the majority opinion does not accommodate itself to our obligation to view the evidence in the light most favorable to the plaintiff. It is reasonably

1. 9 Utah 2d 268, 342 P.2d 884.

susceptible of interpretation that: as plaintiff approached this intersection from the west, he was traveling at a moderate and lawful speed; was keeping a proper lookout ahead toward the intersection, as he should have been; that he saw that the cars facing south were stopped; that the car on the east side of the intersection facing west appeared to be parked; that he was watching the traffic control light and saw it turn green in his favor; so that from all of these facts he could take substantial assurance that it was safe for him to proceed through the intersection; that in that frame of mind it would take some definite and significant warning to arrest his mind therefrom and alert him to danger; that the police car was hidden from his view by the southbound cars so that his only chance to know of its presence was by hearing it. There is also the inference which reasonably could be drawn that the siren was diminished or silent for a brief period while the defendant removed his foot from the siren activator to his clutch in shifting gears. All of the above circumstances could be viewed, not only as giving the plaintiff confidence that he could safely proceed, but as supporting the truthfulness of his testimony that he heard no siren. Under the foregoing fact it seems hardly open to question that the jury could believe that the plaintiff, acting within the standard of reasonable care, could have relied upon the assurances of safety which were present, and that he did so and proceeded too far to avoid the collision before he became aware of the defendant's presence.

The principles just discussed apply with equal cogency to the majority's holding as a matter of law that the speed of the defendant police officer was not negligent. It is certainly to be conceded that the officer at times has a demanding and onerous duty which should not be burdened with unreasonable obstacles in its performance. However, the statute prescribes the measure of his privilege: that he is not obliged to observe the traffic rules nor the speed regulations applicable to others. But it also specifically provides that these exemptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons." [2] As a practical matter that is as far as the statute could go. There cannot be read into it any unrestricted license to drive through a busy intersection, around stopped cars which obstruct the view of oncoming motorists, and against a traffic light, at a speed which will hazard the safety of other motorists relying on the light. It is obvious that any reasonable person, even in an emergency vehicle, would be especially apprehensive of danger in driving through an intersection against the red light. If the evidence is

2. Sec. 41–6–14, U.C.A.1953.

such that reasonable minds might find that the defendant failed to observe the degree of caution which an ordinary prudent person would have done, the question of his conduct must be left to the jury. Judged by that standard, the verdict of the jury, reinforced by the judgment of the trial court, have found that he was negligent. What the police officer, or what we as members of this court might think about the matter is immaterial. If we give more than lip service to the often referred to advantaged position and prerogatives of the jury, that finding should be sustained.

The fundamental difficulty with reversing this judgment is that it runs contrary to our obligation to allow citizens the right of trial by jury; to have their disputes determined by a properly selected group of ordinary everyday citizens.[3] If the verdict can be set aside whenever the court disagrees with it, that is no jury system at all, and the formality of using the jury is but a mockery upon justice. The right of trial by jury necessarily includes the right to claim the benefit of the verdict rendered [4] regardless of the asserted claims or authority of any officer, or even of the court itself. To serve this purpose this court has often declared its reluctance to infringe upon this right and avowed that a case should not be taken from the jury except where it is patent and clear that even upon the most favorable view that might be taken of the evidence, there could exist no basis for recovery under the law; and that whenever there is doubt, it should be resolved by leaving the issue to be determined by the jury.[5] Accordingly, it is my opinion that the verdict and judgment should be sustained.

McDONOUGH, J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.

3. See statement in Stickle v. Union Pacific R. R. Co., 122 Utah 477, 251 P.2d 867, 871 and authorities therein cited.

4. See Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822.
5. See Stickle v. Union Pacific R. R. Co., footnote 3.