UNITED STATES STEEL, a New Jersey corporation, Appellant,

v.

Meldon N. WARNER, Appellee.

No. 8728.

United States Court of Appeals
Tenth Circuit.

June 13, 1967.

Rehearing Denied Aug. 2, 1967.

George W. Latimer, Salt Lake City, Utah (Calvin A. Behle and Parsons, Behle, Evans & Latimer, Salt Lake City, Utah, on the brief), for appellant.

George M. McMillan, Salt Lake City, Utah (Franklin D. Johnson, Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this diversity action, the appellee-plaintiff recovered a $160,000 verdict and judgment against the appellant-defendant for injuries sustained in a fall from the roof of a building at the Geneva, Utah, plant of the appellant-defendant. The parties will be referred to as they appeared in the trial court. Reversal is sought on grounds of insufficiency of the evidence, improper rejection of evidence, and errors in the instructions. We affirm.

Defendant operates a steel mill which was built during World War II as a defense plant. At the time of the accident, plaintiff had been in the roofing business for about 17 years. In 1942, he had worked in the steel mill as a guard and, in 1944, as a maintenance and repair man.

Pursuant to a written contract between the parties, plaintiff undertook to reroof a number of buildings at the mill. We are concerned with the Sanitary Building which housed change and shower facilities for the mill employees. It had a flat roof with eaves extending two feet beyond the brick wall of the building. The roof was constructed with a tar paper and gravel surface over plasterboard. Plaintiff's contract called for the removal and replacement of the tar paper and gravel.

In the course of removing the old surface, the plaintiff noticed that the plasterboard was deteriorated in the southeast corner of the building. He discussed the situation with the defendant's employee Lewis, an engineer. They decided that plaintiff should strip the existing roofing and plasterboard from the eaves to the north and west of this exposed corner back to a point where the supporting two-by-fours were in good condition. The bad timbers were then to be replaced by the defendant and plaintiff was to cover them with new insulation and roofing. The eaves were supported by two-by-fours anchored to two-by-ten ceiling joists. Underneath there was a sheathing of 1″ x 3″ tongue-and-groove lumber, and there was a batten board on the edge. A plaintiff's witness who worked on the design of the mill at the time of construction, testified that the eaves were designed to support the same weight as the roof.

On the morning of July 16, 1963, the plaintiff stripped the roofing materials from the eaves on the east side of the building and had proceeded to the south side when the accident occurred. There was no eye-witness other than the plaintiff who testified:

"I walked over to the south edge to inspect that, to see if any of the plasterboard should be removed on the south end, and that is when the accident occurred. I stepped out on the edge, and there was a sudden sagging under me, and it threw me off balance, and I fell off the roof and the accident had happened."

Further evidence disclosed that a badly deteriorated two-by-four had collapsed. In the fall, plaintiff sustained a severe spinal injury and is now paraplegic.

■ The defendant argues that, as the owner of the premises, it is not liable to an independent contractor for injuries caused by defects which the contractor was employed to repair. This principle, and the authorities which announce it, are not applicable because the plaintiff contracted only to put a new surface on the roof. He was not engaged to make any repairs on the structure of the roof, the rafters, or the decking. The failure was in a rafter. Before the accident, the defendant had undertaken to replace the bad timbers.

■■ Plaintiff was on the premises as a business invitee. The defendant

says that it is not liable to an invitee for, or required to give warning of, an obvious danger [1] and that here the danger was obvious. Evidence for the plaintiff showed that the danger was not obvious. The two-by-fours were completely enclosed on the outside of the building and could not be seen. On the day before the accident, a member of plaintiff's crew had crawled onto the south eaves to remove the batten board and the eaves had supported his weight.

The obvious-danger question is related to the question of the defendant's negligence. The argument is that the defective rafter was not known to it and could not have been known through the exercise of reasonable diligence. Experts for the plaintiff testified that the deterioration of the rafters had been caused by a 20-year exposure to heat and moisture. The heat came from ladles which were customarily shunted onto a nearby railway track from the hearth room for cleaning after dumping molten metal. The moisture came from showers in the Sanitary Building. The inside of the roof was not sealed at the wall, with the result that steam from the showers could seep into the exposed rafters.

◼ Testimony for the plaintiff was that the Sanitary Building was built during World War II and that wooden construction was used because of the shortage of materials even though it was realized that such construction was not desirable for steel mills. The jury could reasonably infer that the defendant, the purchaser of the plant and an experienced steel mill operator, knew the possibility of deterioration in the supporting rafters and owed the plaintiff a duty both to inspect and to warn. This is not a case of a hidden danger which could only be discovered by an expert. We cannot say

as a matter of law that the defendant satisfied the duty which it owed to a business invitee. The questions of obvious danger and defendant's negligence were properly submitted to the jury.[2]

◼ The defendant urges that plaintiff's recovery is barred by assumption of risk and contributory negligence. We recognized in Titan Steel Corporation v. Walton, 10 Cir., 365 F.2d 542, 547, that the Utah courts have said that assumption of risk means actual knowledge of danger and a free and voluntary consent to assume it.[3] Assumption of risk blends into contributory negligence [4] and the two may be considered together for the purposes of this case.

◼ The argument is that the actions of the plaintiff in walking onto the south eaves with knowledge of the conditions along the east side amounted to both assumption of risk and negligence. The eaves on the east side had supported him. On the day before, the south eaves had supported the man who removed the batten board. Although the plaintiff had observed the damage to the plasterboard and the water stains on the rafters, no showing is made that he knew, or should have known, of the deterioration of the rafter which gave way, or of the conditions which over a 20-year period had caused that deterioration. The jury could reasonably infer that the plaintiff was justified in believing that the south eaves would support him and, hence, there was neither assumption of risk nor negligence.

◼ We have repeatedly said that a verdict may not be directed unless the evidence points all one way and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is made.[5] In

1. See Restatement of Torts 2d § 343, p. 215; Sullivan v. Shell Oil Company, 9 Cir., 234 F.2d 733, 738, certiorari denied 352 U.S. 925, 77 S.Ct. 221, 1 L.Ed. 2d 160.

2. See Swift & Co. v. Schuster, 10 Cir., 192 F.2d 615, 616–617.

3. See Johnson v. Maynard, 9 Utah 2d 268, 342 P.2d 884, 887.

4. See Swift & Co. v. Schuster, 10 Cir., 192 F.2d 615, 617.

5. Christopherson v. Humphrey, 10 Cir., 366 F.2d 323, 326.

our opinion, reasonable inferences sustain the claims that the defendant was negligent and that the plaintiff was not contributorily negligent. The case was one for determination by the jury. We cannot say that, as a matter of law, its verdict for the plaintiff is without record support.

The trial court rejected the offer into evidence of the contract between the parties on the ground that an exculpatory provision thereof contravened public policy. That provision reads:

"The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Contractor."

■ In Union Pacific Railroad Company v. El Paso Natural Gas Company, 17 Utah 2d 255, 408 P.2d 910, 913–914, the Supreme Court of Utah declined to give effect to a release-from-negligence provision of a contract when the intent was not "clear and unmistakable" and the document had been prepared by the party seeking enforcement of the provision. We considered this Utah rule in Titan Steel Corporation v. Walton, 10 Cir., 365 F.2d 542, 548–549, a case relating to a Utah contract. On the basis that such contract was made "without the exercise of superior bargaining power, and * * * clearly and unequivocally expresses the intention of the parties," we enforced the release-from-negligence provision. A comparison of the language there used with that appearing in the contract now under consideration convinces us that here the intent to relieve the defendant from its own negligence is not clearly and unequivocally

expressed. A statement that the "safety of all persons * * * shall be the sole responsibility of the Contractor" is not an agreement that the contractor shall indemnify the owner for the negligence of the owner. The disparity in bargaining power between United States Steel and a local roofer requires no comment. We believe that the exculpatory provision violated public policy within the Utah rule.

■ The defendant argues to us that other portions of the contract are relevant and should have been received. The difficulty is that the defendant offered the contract in its entirety.[6] The defendant may not now shift its position and assert reversible error on the refusal to receive the parts of the contract to which the plaintiff made no objection.

■ The defendant complains about the trial court's rejection of its safety regulations. They contained an exculpatory provision similar to that in the contract and were promulgated by the defendant unilaterally. The offer was of all the regulations without elimination of the offending portion. They were properly excluded. The defendant also objects to the refusal of the court to receive the safety regulations of the Utah Industrial Commission. A sufficient answer is that no showing was made of their relevance or materiality.

No good purpose would be served by discussing the specific objections to the instructions. It is enough to say that the rejected requests of the defendant were either improper or adequately covered. In our opinion, the trial court did an outstanding job of fairly and properly instructing the jury in a difficult case.

Affirmed.

6. After the contract was offered the attorney for the plaintiff said: "We would have no objection to the offer insofar as it relates to the typewritten provisions applicable to the obligations of Mr. Warner, insofar as they are concerned with replacing of the roofing and matters related to the construction work itself."

He went on to object to the exculpatory provision on the ground of violation of public policy. After some colloquy, the trial court asked defense counsel, "You offer it in its entirety?" and received the reply, "Yes. I am offering the entire contract."