Al G. RIGTRUP et al., Plaintiffs and Appellants,

v.

STRAWBERRY WATER USERS ASSOCIATION, a Utah Corporation, Defendant and Respondent.

No. 14675.

Supreme Court of Utah.

May 3, 1977.

Jackson B. Howard, of Howard, Lewis & Petersen, Provo, for plaintiffs-appellants.

Reed L. Martineau and George A. Hunt, of Worsley, Snow & Christensen, Salt Lake City, Dave McMullin, Payson, for defendant-respondent.

CROCKETT, Justice:

Plaintiffs, Al G. Rigtrup, et al., brought this action against its electricity supplier Strawberry Water Users Association, alleging that it negligently caused a power outage which resulted in the suffocation of 40,000 chickens in plaintiffs' poultry business. A jury answered special interrogatories that both parties were negligent: the plaintiffs 90% and the defendant 10%, in causing the loss. Therefore, inasmuch as plaintiffs' own negligence was thus determined to be greater than that of the defendant, in applying the "comparative negligence" statute referred to below, the trial court entered judgment for the defendant.[1]

Plaintiffs contend that the trial court erred: in including in its instructions the doctrine of assumption or risk; in refusing to admit in evidence a rule of the Public Service Commission pertaining to electrical installations by utilities; and failure of the court to instruct the jury specifically on that rule and Sec. 58–36–21 dealing with the same subject.

In the fall of 1972, the plaintiffs formed a partnership known as the Lake Shore Egg Ranch and commenced an expansion of their already existing poultry business. Large numbers of chickens in close proximity generate considerable heat and it is necessary to operate large fans to keep them cool. For this purpose defendant utility ran a 2400 volt power line to the plaintiffs' business site, that is, to the transformer at the entrance thereto. But it was the plaintiffs' electrician who installed the wiring and equipment beyond that point. The construction of the plaintiffs' first coop was completed in December 1972. One month later, defendant informed plaintiffs that they should provide a stand-by power system, since 24-hour service could not be guaranteed without occasional interruptions.

In the spring of 1973, the plaintiffs began constructing a second coop. In May 1973, the defendants informed the plaintiffs that they were planning to install a 7200 volt power line to the plaintiffs' business; and also warned plaintiffs that their existing electrical system would not be adequate to handle the load for the two chicken coops. By early June 1973, both coops were in full operation, housing about 60,000 chickens.

1. 78–27–37, U.C.A.1953.

Shortly thereafter, the defendant installed a new transformer because the old one was inadequate to handle the load requirements of the two coops. Defendants again reminded plaintiffs of the inadequacy of their present system and of the necessity of having an emergency generator. Later, the plaintiffs experienced power outages on two occasions for short periods of time, but no damage resulted. In July 1973, the plaintiffs discovered another power outage and contacted the defendant, whose employees found that a portion of the plaintiffs' electrical system had shorted out, causing the power failure. At that time, plaintiffs' employees were shown the faulty wiring and told that the system should be re-wired. Meanwhile, work was progressing on the installation of the new power line, but no date for completion had been set.

The month following the warning just referred to, on August 9, 1973, Mr. Peterson, plaintiffs' manager, left the plant at approximately 6:30 p.m. When he returned shortly after 9:00 p.m., he found the power was out (it is not known for just how long). He phoned the defendant, who immediately dispatched a repair crew. (No complaint is made of any undue delay.) The crew found that the wires in the plaintiffs' own electrical system (on plaintiffs' side of the transformer) had burned off, causing the outage. The power was restored within about 20 minutes. It was ascertained that about 40,-000 chickens had died from heat and suffocation.

The trial court submitted the issues as to defendant's negligence and plaintiffs' contributory negligence, under appropriate instructions as to the duty of each party to exercise the degree of care which ordinary reasonable and prudent persons would exercise under the circumstances. It also explained to the jury that if they found the parties negligent, they should allocate the degree of negligence which each party contributed to the loss of the chickens. Pursu-

ant thereto the jury answered as indicated above: that the plaintiffs were negligent, which contributed 90 per cent to the loss; and that the defendant was negligent, which contributed ten per cent to the loss.

The "Comparative Negligence Statute" was enacted into our law as Chap. 209, S.L.U.1973, and is included in our code as Sec. 78-27-37, U.C.A.1953, which states:

Contributory negligence shall not bar recovery in [any] action . . . to recover damages for negligence . . ., if such negligence was not as great as the negligence . . . of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. As used in this act, "contributory negligence" includes "assumption of the risk."

■ As is apparent from its language, the purpose of that statute was to abolish contributory negligence as a complete defense and thus avoid the harshness which sometimes resulted when a party seeking redress was himself negligent, but only to a minor degree, in relation to the total causation of his injury or damage, but which nevertheless defeated his right to recovery.[2] Injustices which sometimes resulted under that rule can now be minimized or avoided because, under the quoted statute, a party who has suffered injury through the negligence of another, may recover, even though negligent himself, if his contributory negligence is not as great as the negligence of the party who injured him. And conversely, if the negligence of the defendant wrongdoer is greater (presumably 51% or more of the total negligence) than that of the injured plaintiff (presumably 49% or less of the total negligence), the latter may recover any damages caused, diminished by the percentage of his own negligence.

In conformity with the purpose and the express provisions of that statute, based on the findings of the jury that the negligence

---

**2.** It was sometimes erroneously said to be a defense if the plaintiff was negligent "in any degree," or "even in the slightest degree." See

*Devine v. Cook,* 3 Utah 2d 134, 279 P.2d 1073 and cases therein cited.

of the plaintiffs themselves was greater (90%) than the negligence of the defendant (10%), the trial court properly entered judgment for the defendant.

■ Plaintiffs urge that inasmuch as the trial court had adequately instructed on contributory negligence, it was error to also instruct on assumption of risk. They argue that this defense is spurious and should be abolished, citing cases from states where they assert that has been done by judicial declaration.[3] We do not so read those cases. They deal for the most part with whether there are meaningful distinctions between contributory negligence and assumption of risk. Howsoever that might be, we decline the invitation to so change our law. One of the important values in our system which tends to produce confidence in and respect for the law is that the law as it is declared and known has sufficient solidarity and continuity that it can be relied on with assurance. We think that those objectives are best served by the judicial branch refraining from legislating any abrupt or dramatic changes of a substantial nature in the law and by leaving any such changes therein to the legislature, whose constitutional prerogative it is.[4]

■ Though there have been some differences in view as to the defense of assumption of risk and its relation to other aspects of contributory negligence, it has since time immemorial been regarded as a valid defense in the law of this State. It has sometimes been said to be but a specialized aspect of contributory negligence[5] in that it can be intermingled and fused with other aspects thereof in certain circumstances. It is also sometimes said to be something separate from contributory negligence,[6] as it undoubtedly can be in some circumstances.[7] However, it requires but little reflection to see that where there is a known danger, the risk of which is voluntarily assumed by a party, such action may well fall within the lack of due care which constitutes negligence and also may be correctly termed an assumption of risk.[8] If such be the situation, the party should be charged with the responsibility for his conduct, by whatever term it may be called; and the comparative negligence statute quoted above should be applied as the trial court correctly did in this case.

That our conclusion just stated is the correct one under our law is supported, not only by the reasoning just stated and the cases cited, but is made abundantly clear by the fact that the legislature, apparently in order to avoid any misunderstanding thereon, appended the last sentence as quoted above that: as used in this act, "contributory negligence" includes "assumption of the risk." That sentence indicates a clear legislative intent to recognize the doctrine of "assumption of risk" as an aspect of contributory negligence in Utah law. Therefore any attempt on our part to judicially abolish that defense would amount to a direct repudiation of the legislative expression and thus a clear usurpation of the legislative prerogative.[9]

■ Reflection back upon the facts recited herein will reveal that there was sufficient basis in the evidence from which a jury could reasonably believe that the plaintiffs were aware of a known danger be-

3. *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Bulatao v. Kauai Motors*, 49 Haw. 1, 406 P.2d 887 (1965); *Ford Motor Co. v. Arguello*, 382 P.2d 886 (Wyo. 1963); *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959).

4. See *Davis v. Provo City Corp.*, 1 Utah 2d 244, 265 P.2d 415 (1953); *Kennecott Copper Corp. v. Anderson*, 30 Utah 2d 102, 514 P.2d 217.

5. *Hindmarsh v. O.P. Skaggs Foodliner*, 21 Utah 2d 413, 446 P.2d 410 (1968); *Evans v. Stuart*, 17 Utah 2d 308, 410 P.2d 999 (1966).

6. *Calahan v. Wood*, 24 Utah 2d 8, 465 P.2d 169 (1970); *Ferguson v. Jongsma*, 10 Utah 2d 179, 350 P.2d 404 (1960).

7. Prosser, Law of Torts, 4th Edition, p. 441.

8. *Li v. Yellow Cab Co., supra*, note 3; *Lyons v. Redding Const. Co.*, 83 Wash.2d 86, 515 P.2d 821 (1973).

9. See *Becker v. Beaverton School Dist.*, 25 Or. App. 879, 551 P.2d 498, where the court refused to rule that a comparative negligence statute had completely abolished the defense of assumption of the risk.

cause of their inadequate wiring, and that they voluntarily persisted in assuming the risk of such an occurrence as did finally happen. Consequently, the trial court was justified in giving the instruction of assumption of risk.

■ Plaintiffs assign error in the trial court's refusal to admit in evidence a public service commission rule No. A67–05–31.-11(f), which states:

No utility shall furnish electric service to any applicant until satisfied that the wiring and utilization equipment to be served have been inspected and passed by the controlling public inspection and authority. Should an electric utility . . discover defective electric wiring or defective equipment in service . . . , it shall immediately report the same to the Commission and should it be notified in writing by this Commission . . . that consumers' wiring . . . is defective . . . , it shall immediately discontinue electrical service . . . , unless special permission is otherwise given by this Commission . . . .

Under that rule, before the defendant could have safely discontinued electric service to the plaintiffs, it would have had to make a report to the Commission, and only if the Commission had then notified defendant in writing to do so, could it have discontinued electric service to plaintiffs.

The general purport of plaintiffs' argument based on the above quoted rule seems to be thus: I was doing wrong in having inadequate electric wiring; and this was hazardous to my chickens. You also knew the former and should have known the latter. Although it was my own wrong which resulted in my injury, it was really your fault, because you did not stop me. Wherefore you should have notified the Public Service Commission and they should have ordered you not to furnish me electricity. Such a procedure presumably could have

had one of two results: either the defendant would have turned off the electricity and plaintiffs' chickens would have suffocated anyway, or plaintiffs would have then heeded the warning already given to them several times to correct the deficiencies in their wiring.

The fabric of justice should not be woven on any such involuted logic as to permit a party who is doing wrong to place the blame on another and recover therefor. We see no reason to disagree with the position the trial court appears to have taken: that the application of the proffered rule would not have had any significant probative value as to the duty imposed on both parties to use due care,[10] because anything done or omitted to be done concerning said rule would have had no causative effect on the suffocation of the plaintiffs' chickens.

■ What has been said above is applicable in principle to plaintiffs' further contention of error in the trial court's refusal to further instruct on the defendant's duty of care based on Sec. 58–36–21, U.C.A.1953. It provides for safety requirements and applicable standards for installations of electrical equipment. We do not see that there was error in such refusal to so further instruct as to defendant's duty of care, because there was no substantial evidence that the defendant's equipment (that is, its equipment on its side of the transformer) was in any way inadequate or unsafe.

■ In summary: it appears that the parties have had their entitlement of a full and fair opportunity to present their evidence and arguments upon the issues, and under instructions which plainly and adequately defined their respective duties of care, have had the issues resolved by a jury. We are not persuaded that there was any error which would warrant upsetting the judgment.[11]

---

10. 58 A.L.R.3rd 148; *Peterson v. Salt River Project Agr. Imp. & Power Dist.*, 96 Ariz. 1, 391 P.2d 567 (1964).

11. That our law mandates that there should be no reversal of a judgment unless there is error

which is substantial and prejudicial in that in its absence there is a reasonable likelihood of a different result, see Rule 61, U.R.C.P.; *Rowley v. Graven Bros. and Co.*, 26 Utah 2d 448, 491 P.2d 1209 (1971).

Affirmed. Costs to defendant (respondent).

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, Justice, concurs in result.