JACOBSEN CONSTRUCTION COMPA-
NY, INC., a corporation; Jelco, Incorpo-
rated, a corporation; and Central Utah
Water Conservancy District, a body cor-
porate and politic, Plaintiffs and Re-
spondents,

v.

STRUCTO–LITE ENGINEERING, INC.,
a corporation, Defendant and
Appellant.

No. 16208.

Supreme Court of Utah.

Oct. 1, 1980.

Raymond M. Berry and H. James Clegg of Snow, Christensen & Martineau, Harold A. Hintze, Salt Lake City, for defendant and appellant.

Arthur H. Nielsen and W. Waldan Lloyd of Nielsen, Henriod, Gottfredson & Peck, Edward W. Clyde of Clyde & Pratt, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

This appeal by defendant is from a judgment awarding plaintiffs damages resulting from defendant's faulty construction of a fiberglass storage tank. Defendant's claim is that the jury's finding of assumption of risk entirely precludes a judgment for plaintiff under both of plaintiffs' theories of recovery: negligence and breach of express warranty. The central issues raised are (1) whether assumption of risk is a complete bar to plaintiffs' recovery under Utah's comparative negligence statute, Utah Code Ann. (1953), as amended, § 78–27–37, and (2) whether assumption of risk constitutes a defense to an action for breach of express warranty.

Plaintiffs Jacobsen Construction Company and Jelco, Inc. ("Jacobsen–Jelco"), acting as joint venturers, contracted with plaintiff Central Utah Water Conservancy District ("Conservancy District") to build a water treatment plant. Jacobsen–Jelco entered into a subcontract with defendant Structo–Lite Engineering, Inc. ("Structo–Lite") whereby Structo–Lite would provide six fiberglass chemical storage tanks constructed in accordance with the plans and specifications of the project engineers, third–party defendant Templeton, Linke and Associates.

Mr. Bevan, president of Structo–Lite, represented to Jacobsen's agent that Structo–Lite would fabricate fiberglass tanks which would meet the plans and specifications of the project engineers. Mr. Bevan personally signed the purchase order which provided that Structo–Lite would supply the tanks in conformity with all engineering plans and specifications and that they would be warranted by Structo–Lite as to quality of workmanship and materials.

After defendant delivered the tanks to the job site, the project superintendent for Jacobsen–Jelco observed that some of the temporary supports used to maintain roundness had failed in transit, causing the tanks to appear elliptical at the open end and resulting in damage to the flanges located at the tops of the tanks. Mr. Bevan, upon being informed of these findings, indicated

that he would make the necessary repairs and install the remaining connections.

Prior to completion of the job, all six tanks were filled with water to test for leaks. Four of the six tanks were found to have minor leaks. The tank which subsequently failed was not one of the four. Structo–Lite, upon being informed of the leaks, made the necessary repairs.

Upon completion of the project and prior to operation, a seven–day test of the facilities was conducted. The plant, upon passing the test, was declared ready for operation.

Liquid alum was poured into one of the tanks in May of 1974. The following July a tank which subsequently exploded was filled with alum. The day after the chemical was placed in the tank, the plant operator noticed a minute leak. Before he could lessen the pressure, the tank exploded, spreading the liquid chemical throughout the entire building. Substantial damage to the heating and electrical system in the plant resulted.

Plaintiffs filed a complaint alleging negligence in the construction of the tanks and breach of contract and express warranty for failure to construct the tanks according to the specifications agreed upon. Structo–Lite filed a third–party complaint against Templeton, Linke and Associates for inadequate design and specifications.

After all testimony was submitted, the trial court directed a verdict against Structo–Lite on the ground that the evidence showed as a matter of law that the tanks had been negligently manufactured. Defendant then requested that special interrogatories be submitted to the jury. In answer to the interrogatories, the jury found Jacobsen–Jelco and Conservancy District had been contributorily negligent and had assumed the risk of the incurred damages. In apportioning the proximate contribution of each party toward the loss, the jury found Structo–Lite 70% liable and Jacobsen–Jelco and Conservancy District 20% and 10% responsible, respectively. The jury found Templeton, Linke and Associates, third–party defendants, not negligent.

Plaintiffs cross–appeal, contending that they were entitled to a finding, as a matter of law, that they were not contributorily negligent and that they had not assumed the risk of defendant's negligence. The evidence shows that Jacobsen–Jelco was aware that the tanks were "out–of–round," a visual inspection evidencing a three to four inch differential in tank diameter from the high to the low spot on the tank. Jacobsen–Jelco was also aware of an elliptical shape and damaged flanges located at the top end of the tanks resulting from failure of the bracing supports during transit to the water plant. Conservancy District noticed during construction of the tanks that they did not all have smooth surfaces and detected spots where the woven roving was not covered by the fiberglass matting. Further, after installation at the plant site, flat spots and irregularities on the tanks were noticed.

After the water testing revealed leaks in several of the tanks, plaintiffs, knowing that alum solution was heavier than water, proceeded to fill the tanks with alum solution without any further testing for tensile strength. Moreover, testing by the American Testing Laboratories at the direction of Jacobsen–Jelco revealed some deficiencies in the fabrication of the tanks. Plaintiffs' knowledge of these defects must be viewed in light of the warranty given by defendants that the tanks would conform to the specifications of the general contract, including a tensile strength of 100,000 psi and a flexal strength of 150,000 psi with a "very smooth, hard surface and good finishing properties."

We review the facts and the inferences to be drawn therefrom in favor of the verdict and conclude that the verdict as to contributory negligence is supported by the evidence. Furthermore, there is a reasonable basis in the evidence to find that plaintiffs unreasonably proceeded in light of their knowledge and appreciation of the risk created by defendant, and we thus uphold the jury's finding of plaintiffs' assumption of risk.

We next address the contention raised by defendant that plaintiffs' assumption of risk should completely bar recovery. The term "assumption of risk" has been historically defined and applied in different ways. Under the circumstances in this case, the term "assumption of risk" meant the voluntary, yet unreasonable, encounter of a known, appreciated risk. The complete bar to recovery which such conduct once constituted in a negligence action has been abolished by the Utah comparative negligence statute to avoid the harshness visited upon plaintiffs as a result of the all–or–nothing nature of the former rule of law. Section 78–27–37 provides:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. As used in this act, "contributory negligence" includes "assumption of the risk."

The legislative intent to include assumption of risk within contributory negligence terminology and eliminate the use of the term is consistent with a recent trend established by other courts, legislatures, and legal commentators alike.

The 1973 Oregon Legislature passed the Oregon Comparative Negligence Statute which is basically identical to Utah's comparative negligence statute. Two years later, in an apparent attempt to clarify its intent, the Legislature amended the Act. ORS 18.470 Oregon Laws, 1975, Chapter 599, § 4(2) now reads: "The doctrine of implied assumption of the risk is abolished." Connecticut has likewise abolished the term by statute. G.S.C.A. § 52–572h (1973). See also North Dakota Statute N.D.C.C. § 9–10–06 (1973); *Wentz v. Deseth*, N.D., 221 N.W.2d 101 (1974).

The term "assumption of risk" has caused considerable confusion in its indiscriminate use.[1] Its overuse in the number and variety of definitions of the term have brought disfavor to the defense, and the trend has been to eliminate its use in favor of negligence language. See Keeton, *Assumption of Risk in Products Liability Cases*, 22 La.L. Rev. 122, 123–30 (1961); Prosser, *Law of Torts* § 68 (4th ed. 1971); 2 Harper and James, *The Law of Torts* § 21.1 (1956). *Felgner v. Anderson*, 375 Mich. 23, 133 N.W.2d 136, 148–49 n.4 (1965), quoted Professor James:

> "The doctrine of assumption of risk, however it is analyzed and defined, is in most of its aspects a defendant's doctrine which restricts liability and so cuts down the compensation of accident victims. It is a heritage of the extreme individualism of the early industrial revolution. But quite aside from any questions of policy or of substance, the concept of assuming the risk is purely duplicative of other more widely understood concepts, such as scope of duty or contributory negligence. The one exception is to be found, perhaps, in those cases where there is an actual agreement. Moreover, the expression has come to stand for two or three distinct notions which are not at all the same, though they often overlap in the sense that they are applicable to the same situation.

> "Except for express assumption of risk, therefore, the term and the concept should be abolished. It adds nothing to modern law except confusion. For the most part the policy of individualism it represents is outmoded in accident laws; where it is not, that policy can find full

---

1. Justice Frankfurter, in a concurring opinion in *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 68, 63 S.Ct. 444, 451, 87 L.Ed. 610 (1943), commented upon this confusion:

    The phrase "assumption of risk" is an excellent illustration of the extent to which un-

critical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas.

scope and far better expression in other language. There is only one thing that can be said for assumption of risk. In the confusion it introduces, it sometimes—ironically and quite capriciously—leads to a relaxation of an overstrict rule in some other field. The aura of disfavor that has come to surround it may occasionally turn out to be the kiss of death to some other bad rule with which it has become associated. We have seen how this may happen with the burden of pleading and proving an exceptional limitation on the scope of defendant's duty. There may be other instances. But at best this sort of thing is a poor excuse indeed for continuing the confusion of an unfortunate form of words."

[James, *Assumption of Risk*, 61 Yale L.J. 141, 168–69 (1952).]

For purposes of analysis, assumption of risk is often divided into three categories. Those courts which attempt to deal with the various concepts subsumed under the one label refrain from considering one form, that is, the "express" form of assumption of risk. See *Blackburn v. Dorta*, Fla., 348 So.2d 287, 289 (1977); *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959). An express assumption of risk involves a contractual provision in which a party expressly contracts not to sue for injury or loss which may thereafter be occasioned by the acts of another. We not only follow suit by refraining to include this form of assumption of risk in our discussion, but furthermore fail to see a necessity for including this form within assumption of risk terminology. As stated in James, *Assumption of Risk*, 61 Yale L.J. 141 (1952), the field of contract law is more than adequate to deal with this bar to recovery.

We are thus left with the primary and secondary forms of assumption of risk. In its primary sense, it is an alternative expression for the proposition that defendant was not negligent, that is, there was no duty owed or there was no breach of an existing duty. In its secondary sense, assumption of risk is an affirmative defense to an established breach of duty and as such is a phase of contributory negligence. As stated in *Meistrich v. Casino Arena Attractions, Inc., supra* :

We here speak solely of the area in which injury or damage was neither intended nor expressly contracted to be nonactionable. In this area, assumption of risk has two distinct meanings. In one sense (sometimes called its "primary" sense), it is an alternate expression for the proposition that defendant was not negligent, *i. e.*, either owed no duty or did not breach the duty owed. In its other sense (sometimes called "secondary"), assumption of risk is an affirmative defense to an established breach of duty. In its primary sense, it is accurate to say plaintiff assumed the risk whether or not he was "at fault", for the truth thereby expressed in alternate terminology is that defendant was not negligent. But in its secondary sense, *i. e.*, as an affirmative defense to an established breach of defendant's duty, it is incorrect to say plaintiff assumed the risk whether or not he was at fault.

\* \* \* \* \* \*

Hence we think it clear that assumption of risk in its secondary sense is a mere phase of contributory negligence, the total issue being whether a reasonably prudent man in the exercise of due care (a) would have incurred the known risk and (b) if he would, whether such a person in the light of all of the circumstances including the appreciated risk would have conducted himself in the manner in which plaintiff acted.

Thus in the area under discussion there are but two basic issues: (1) defendant's negligence, and (2) plaintiff's contributory negligence. In view of the considerations discussed above, it has been urged that assumption of risk in both its primary and secondary senses serves merely to confuse and should be eliminated. Editorial, Assumption of the Risk—A False Issue, 73 N.J.L.J. 346 (1950); James, Assumption of Risk, 61 Yale L.J. 141, 169 (1952); 2 Harper and James, Law of Torts (1956), § 221.8, p. 1191.

\* \* \* \* \* \*

Perhaps a well–guarded charge of assumption of risk in its primary sense will aid comprehension. But we cannot see how a charge of the concept in its secondary sense will contribute a net gain. [155 A.2d at 93, 94–95.]

The New Jersey court disposed of the last vestiges of assumption of risk four years later in *McGrath v. American Cyanamid Co.*, 41 N.J. 272, 196 A.2d 238, 239–41 (1963):

In *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 82 A.L.R.2d 1208 (1959), we pointed out that assumption of the risk was theretofore used in two incongruous senses: in one sense it meant the defendant was not negligent, while in its other sense it meant the plaintiff was contributorily negligent. We said that in truth there are but two issues–negligence and contributory negligence–both to be resolved by the standard of the reasonably prudent man, and that it was erroneous to suggest to the jury that assumption of the risk was still another issue.

It was our hope that after *Meistrich* the bench and bar would focus upon the true issues, but unhappily some cling to the terminology of assumption of risk and continue to be misled by it even while purporting to think of it as merely a covertible equivalent of negligence or contributory negligence.

\* \* \* \* \* \*

In *Meistrich* we said the terminology of assumption of the risk should not be used when it is projected in its secondary sense, i. e., that of contributory negligence (31 N.J., at p. 55, 155 A.2d at p. 96, 82 A.L.R.2d 1208). We thought, however, that '[p]erhaps a well–guarded charge of assumption of risk in its primary sense will aid comprehension' (31 N.J. p. 54, 155 A.2d p. 96, 82 A.L.R.2d 1208). \* \* \* Experience, however, indicates the term 'assumption of risk' is so apt to create mist that it is better banished from the scene. We hope we have heard the last of it. Henceforth let us stay with "negligence" and "contributory negligence."

The New Jersey decisions quoted above have been cited approvingly by several jurisdictions adopting the same approach. *Leavitt v. Gillaspie*, Alaska, 443 P.2d 61 (1968); *Fawcett v. Irby*, 92 Idaho 48, 436 P.2d 714 (1968) (Spear, J., concurring specially); *Felgner v. Anderson*, 375 Mich. 23, 133 N.W.2d 136 (1965); *Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147 (1972). Other courts have likewise abolished the use of assumption of risk terminology, accepting the argument that assumption of risk serves no purpose which is not served either by the doctrine of contributory negligence or the common law concept of duty. *Bolduc v. Crain*, 104 N.H. 163, 181 A.2d 641 (1962); *McConville v. State Farm Mutual Automobile Ins. Co.*, 15 Wis.2d 374, 113 N.W.2d 14 (1962). See also *Petrone v. Margolis*, 20 N.J.Super. 180, 89 A.2d 476 (1952).

The policy set forth in our comparative negligence act parallels this trend. This Court was faced with construing the assumption of risk doctrine in light of our comparative negligence act in *Rigtrup v. Strawberry Water Users Association*, Utah, 563 P.2d 1247 (1977). The Court recognized the various forms of conduct subsumed under assumption of risk terminology but indicated that retention of the term comported with the statute and that the term, properly construed, was not inconsistent with the comparative fault concept.

What is important is the concept embodied in the comparative negligence statute, and the particular labels assigned to the type of fault involved should not interfere therewith. The Court in *Rigtrup* alluded to this form of analysis by focusing on the underlying conduct rather than the traditional terminology in the following statement:

[Assumption of risk] has sometimes been said to be but a specialized aspect of contributory negligence in that it can be intermingled and fused with other aspects thereof in certain circumstances. It is also sometimes said to be something separate from contributory negligence, as it undoubtedly can be in some circumstances. However, it requires but little

reflection to see that where there is a known danger, the risk of which is voluntarily assumed by a party, such action may well fall within the lack of due care which constitutes negligence and also may be correctly termed an assumption of risk. If such be the situation, the *party should be charged with the responsibility for his conduct, by whatever term it may be called*; and the comparative negligence statute quoted above should be applied as the trial court correctly did in this case. [Footnotes omitted; emphasis added.] [563 P.2d at 1250.]

We thus hold that under our comparative negligence statute "assumption of risk" language is not appropriate to describe the various concepts previously dealt with under that terminology but is to be treated, in its secondary sense, as contributory negligence. Specifically, and with particular reference to our comparative negligence act, the reasonableness of plaintiff's conduct in confronting a known or unknown risk created by defendant's negligence will basically be determined under principles of contributory negligence.[2] Attention should be focused on whether a reasonably prudent man in the exercise of due care would have incurred the risk, despite his knowledge of it, and if so, whether he would have conducted himself in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the appreciated risk. See *Leavitt v. Gillaspie, supra.* Then, if plaintiff's unreasonableness is viewed to be less than that of defendant, according to the terms of the statute, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering."

Defendants next contend that assumption of risk should stand as a bar to recovery for breach of express warranty.

In *Vernon v. Lake Motors*, 26 Utah 2d 269, 488 P.2d 302 (1971), this Court held that a plaintiff who deliberately and unreasonably uses a product which he knows to be defective is precluded from recovering damages in an action for breach of express warranty.[3]

Nevertheless, it has been argued that the principles of comparative fault should be extended to breach of warranty cases. Pursuant to that theory damages would be reduced to the extent of plaintiff's contribution to the fault. But no such proposal is before the Court, and we refrain from reappraising the status of the law as to assumption of risk as a defense to breach of express warranty.

In this case the jury apportioned by percentage the fault of each party without differentiating between the negligence and breach of express warranty causes of action. Since the same conduct of defendant constituted both negligence and breach of warranty, and since the jury was instructed that the damages resulting from the breach of warranty were the same as for negligence, the finding of assumption of risk applies equally to both the negligence and warranty claims.

As to the remaining issues, we hold that the trial court acted within the confines of sound discretion on all counts.

The judgment of the district court is affirmed. Costs to Respondents.

MAUGHAN and WILKINS, JJ., concur.

HALL, J., concurs in result.

CROCKETT, Chief Justice (concurring in result).

I must confess my inability to see either necessity or desirability in the main opinion's treatment of what impresses me as an

2. When there is a knowing and express oral or written consent to the dangerous activity or condition, a contractual theory will suffice to bar recovery.

3. We also note that this Court in *Ernest W. Hahn, Inc. v. Armco Steel Co.*, Utah, 601 P.2d 152 (1979), stated in dictum that one who un- reasonably proceeds to make use of a product which he knows to be dangerous cannot recover under a strict products liability theory or breach of implied warranty theory. The Court did not address the issue of whether comparative fault had any applicability in such a case.

effort to discredit the doctrine of assumption of risk in order to decide this case. It is my view that the trial court gave a correct and appropriate instruction as applied to the evidence. That is sufficient to dispose of the issue.

Though it may be true that assumption of risk is but a specialized aspect of contributory negligence, it has its uses in more closely focusing attention upon certain fact situations.[1] The broad principle which underlies contributory negligence is that the plaintiff fails to use reasonable care for his own safety. A particular aspect thereof is where he knows of a danger, and has a reasonable opportunity to make an alternative choice, but nevertheless voluntarily proceeds and assumes the risk of harm.[2]

This Court has but recently dealt with this problem in *Rigtrup v. Strawberry Water Users Ass'n*,[3] wherein we stated:

Plaintiffs urge that inasmuch as the trial court had adequately instructed on contributory negligence, it was error to also instruct on assumption of risk. They argue that this defense is spurious and should be abolished, citing cases from states where they assert that has been done by judicial declaration.* We do not so read those cases. They deal for the most part with whether there are meaningful distinctions between contributory negligence and assumption of risk. Howsoever that might be, *we decline the invitation to so change our law. One of the important values in our system which tends to produce confidence in and respect for the law is that the law as it is declared and known has sufficient solidarity and continuity that it can be relied on with assurance.* We think that those objectives are best served by the judicial branch refraining from legislating any abrupt or dramatic changes of a substantial nature in the law and by leaving any such changes therein to the legislature, whose constitutional prerogative it is.*

Though there have been some differences in view as to the defense of assumption of risk and its relation to other aspects of contributory negligence, *it has since time immemorial been regarded as a valid defense in the law of this State.*

\* \* \* \* \* \*

That our conclusion just stated is the correct one under our law is supported, not only by the reasoning just stated and the cases cited, but is made abundantly clear by the fact that the legislature, apparently in order to avoid any misunderstanding thereon, appended the last sentence as quoted above that: *as used in this act, "contributory negligence" includes "assumption of the risk."* That sentence indicates a clear legislative intent to recognize the doctrine of "assumption of risk" as an aspect of contributory negligence in Utah law. Therefore any attempt on our part to judicially abolish that defense would amount to a direct repudiation of the legislative expression and thus a clear usurpation of the legislative prerogative. \* \* \* See citations in original. [Emphasis added.]

In accordance with what has been said above, I do not join in the main opinion's treatment of what I regard as the time–honored and, in some instances, useful doctrine of assumption of risk; first, because I do not think that treatment is necessary to the correct and satisfactory disposition of this case; and second, because I think the previous decisions of this Court are sound and useful applications of the law to the particular fact situations and that others will likely continue to occur in the future.

1. See discussion by Justice Henriod, speaking for the Court, in *Clay v. Dunford, et al.*, 121 Utah 177, 239 P.2d 1075 (1952).

2. See *Jacques v. Farrimond*, 14 Utah 2d 166, 380 P.2d 133 (1963), citing Prosser on Torts, p. 311; *Johnson v. Maynard*, 9 Utah 2d 268, 342 P.2d 884 (1959).

3. Utah, 563 P.2d 1247 (1977).